EMMENEGGER CONSTRUCTION CO., INC., Plaintiff-Appellant, *v.* FRANK KING *et al.*, Defendants-Appellees.

Fifth District    No. 80-603

Opinion filed January 29, 1982.

424

Thomas Q. Keefe, Jr., of Hillebrand, Cook, Shevlin & Keefe, of Belleville, and Husch, Eppenberger, Donohue and Elson & Cornfield, both of St. Louis, Missouri (Joseph P. Conran and Lisa M. Camel, of counsel), for appellant.

Bernard J. Ysursa, of Sprague, Sprague and Ysursa, of Belleville, for appellee Jerry Ames.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Emmark Collaborative, Inc., and Emmenegger Construction Company, Inc., instituted separate proceedings to foreclose mechanics' liens in the Circuit Court of St. Clair County against the owners and lien claimants of a construction project known as the Oak Hill Racquet Club. Emmark claimed sums were due it for the design and construction of the improvements, and Emmenegger claimed money was due it as a subcontractor for concrete work, carpentry labor, common labor and landscaping as well as other work. Jerry Ames, d/b/a Jerry Ames Construction Company, a lien claimant, was named a defendant in both actions. Ames filed counterclaims against Emmenegger and Emmark seeking damages incurred as a result of a breach of an alleged oral contract in failing to pay for certain concrete work furnished by Ames. All other matters were disposed of, and Ames' claims were tried before the court after the two actions were consolidated for trial. The court entered judgment against Emmenegger in the amount of $16,172.55 and in favor of Emmark. In addition, the court, finding the refusal to pay the claim to be unreason-

able, awarded prejudgment interest to Ames at the statutory rate. (Ill. Rev. Stat. 1979, ch. 74, par. 2.) Only Emmenegger Construction appeals.

The following issues are raised on appeal: whether the finding of the trial court as to the existence of a contract between Ames and Emmenegger was against the manifest weight of the evidence; whether the job superintendent on the construction site had authority, actual or apparent, to bind Emmenegger to the alleged contract, and whether the trial court's finding that the failure to pay the claim was unreasonable as to justify an award of prejudgment interest was against the manifest weight of the evidence.

A detailed recitation of the facts is necessary. In June of 1973, Frank King and John J. Vassen, co-trustees of Oak Hill Racquet Club Land Trust No. 1, contracted with Emmark Collaborative, Inc., for the design, construction and construction management of the Oak Hill project. Emmark then entered into a subcontract with Emmenegger Construction Company, Inc. Emmenegger was to do the concrete work on the project. At the time these contracts were entered into and at all other times relevant to this litigation, Russell Emmenegger was the sole shareholder in Emmark and the sole or majority shareholder in Emmenegger. During the same period, Leo Kuntz was either corporate secretary or president of Emmark, depending on whether we credit his testimony or his verification of the sworn complaint filed by Emmark, and also served as vice-president of Emmenegger.

As stated, Emmark was the construction manager for the Oak Hill project. Fred Alsbach was the job superintendent for the project and directed activities on the job site. There is some dispute as to Alsbach's employer. Kuntz testified that Alsbach was an employee of Emmenegger, but that for the purposes of the project was working for Emmark. However, the record reveals that Alsbach was paid by Emmenegger.

Labor and contract problems arose for Emmenegger in late 1973. Pursuant to the suggestion of John Yock, a representative of Concrete, Inc., Ames approached Alsbach concerning the possibility of doing some of the concrete work. It is undisputed that Alsbach hired Ames to do this work. Ames testified that the agreement between himself and Alsbach called for the work to be performed in January and February of 1974. The exact dates Ames was to pour the concrete were unknown because this work depended on the progress of other subcontractors and was dictated somewhat by weather conditions. This agreement was never reduced to a writing.

There is some indication that Ames was not certain for whom he was working. He dealt exclusively with Alsbach and did not meet or talk to either Russell Emmenegger or Leo Kuntz. Ames testified that the trailer at

the construction site had a large sign labeled "Emmenegger Construction Company" and that he assumed that he was working for Emmenegger.

Ames testified that, by the terms of the agreement with Alsbach, he was to present a bill for the work completed at the end of the month and that payment would be forthcoming sometime between the 10th and 20th day of the following month. It should be noted that Alsbach did not testify at the trial and there was no other evidence submitted with regard to the terms of the agreement.

Ames completed approximately one-half of the work during January and on January 31, 1974, he presented a bill for $7,516.20 to Alsbach. The bill was presented on a work order form to "Emmenegger Const., Inc." and was approved for payment by Leo Kuntz. The bill was approved on an Emmenegger Construction Company, Inc., purchase order form which was signed by Alsbach. This bill was never paid. Ames continued to work until he had completed performance on the contract. When he returned to the jobsite on approximately March 1, 1974, to present his bill for the February work, he could not find Alsbach and noticed that the Emmenegger trailer was gone. The February bill was for $8,656.35.

Ames testified that after going to the jobsite on or about March 1, 1974, he called the office of Emmenegger Construction Company, Inc. and was referred to Leo Kuntz. When Ames inquired as to when he would be paid, Kuntz responded that he would be paid when the company received payment for work completed. It is unclear whether Kuntz was referring to monies owing to Emmenegger or Emmark.

Kuntz testified that Ames was a subcontractor of Emmark and not of Emmenegger. He stated that Emmenegger subcontracted to do the concrete work, and Ames subcontracted to do the flat work. Kuntz further stated that it was not uncommon to divide the concrete work in this manner. A thorough search of the record reveals that Ames was not listed as a subcontractor of Emmark on any of the numerous documents submitted. This includes documents dated January 31, 1974, and February 28, 1974.

There is also a dispute as to when Emmark and Emmenegger terminated work on the job. Ames testified that he performed his work between January 22, 1974, and February 22, 1974. He stated that Alsbach was on the job throughout this period as was Emmenegger's trailer. Ames further testified that there were many other tradespersons working throughout this period. Kuntz testified that Emmark pulled off the job on February 11, 1974; although, in Emmark's complaint to foreclose, verified by Kuntz, it was averred that Emmark performed work through February 28, 1974. In so stating, he places primary reliance on a daily log kept by Alsbach in which the last entry was made on that date. Kuntz further testified that he visited the jobsite after February 11, 1974, and saw

tradespersons working. The construction trailer was removed from the jobsite on February 28, 1974. Kuntz testified that he informed all of the subcontractors by telephone, including Ames, that Emmark was pulling off the job. Kuntz was uncertain as to the date the calls were made. On March 21, 1974, a form letter was sent to all the subcontractors, including Ames, that Emmark was terminating work. This letter is the only written acknowledgement of Ames' claimed status as a subcontractor of Emmark.

■■ Emmenegger asserts that Ames failed to prove the existence of a contract between itself and Ames by a preponderance of the evidence. Whether an oral contract exists, its terms and conditions and the intent of the parties are questions of fact to be determined by the trier of fact. (*Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 371 N.E.2d 3.) In the instant case, the trial court, pursuant to the request of Emmenegger, made oral findings and conclusions prior to pronouncing judgment. The trial court found that Ames was hired by Alsbach, that Alsbach was employed by Emmenegger and that Alsbach hired Ames as a subcontractor of Emmenegger.

It is undisputed that Alsbach hired Ames to do certain concrete work on the Oak Hill project. Ames' testimony with regard to the terms and conditions of the agreement was uncontroverted. This testimony reveals definite and certain terms, including the price to be charged and time and method of payment. Therefore, the real questions raised with regard to the existence of a contract between Ames and Emmenegger are whether Alsbach was in Emmenegger's employ at the time of the agreement, and, if he was, whether he had authority to bind Emmenegger to the contract.

■■ It is axiomatic that findings of the trier of fact will not be disturbed on appeal unless they are clearly contrary to the manifest weight of the evidence (*Yale Development Co. v. Texaco, Inc.* (1977), 51 Ill. App. 3d 616, 366 N.E.2d 892); and that for judgment to be against the manifest weight of the evidence, it must appear that conclusions opposite to those reached by the trier of fact are clearly evident. (*Joray Mason Contractors, Inc. v. Four J's Construction Corp., Inc.* (1978), 61 Ill. App. 3d 410, 378 N.E.2d 328.) As stated, the trial court found that Alsbach was employed by Emmenegger. Emmenegger admits that Alsbach generally worked for it, but asserts that for the purposes of the Oak Hill project, he was employed by Emmark as the job superintendent. However, throughout the relevant period, Alsbach continued to be paid by Emmenegger. The only evidence supporting Emmenegger's position was Kuntz' testimony. The trial court is in a better position to observe the conduct and determine the credibility of a witness. (*Joray Mason Contractors.*) In the instant case, it is apparent that the trial court did not believe Kuntz' testimony. A careful review of the testimony in question reveals that it was replete with

contradiction and that the impeachment of Kuntz was effective. Therefore, we find that the trial court's determination that Alsbach was an employee of Emmenegger at the time of the agreement with Ames was not against the manifest weight of the evidence.

The trial court found that Alsbach was an employee of Emmenegger and that Alsbach hired Ames to do some of the concrete work. Although no express finding of agency was made, it is implicit in the trial court's decision, that it found Alsbach had the authority to bind Emmenegger to the contract in question. The existence of this authority is the main issue before us on appeal.

Ames asserts that the relationship between Alsbach and Emmenegger was sufficient to clothe Alsbach with the apparent authority to bind Emmenegger to the contract with Ames. Emmenegger, citing *Shoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 405 N.E.2d 1076, responds that the authority of an agent may only come from the principal and it is therefore necessary to trace the source of an agent's authority to some word or act of the alleged principal. Emmenegger asserts that there were no words or acts by itself or its authorized representatives which establish such apparent authority.

■■ The law of agency in Illinois is in accord with the Restatement (Second) of Agency on the subject of apparent authority. (See *Shoenberger*.) The Restatement provides in pertinent part:

> "* * * apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." (Restatement (Second) of Agency §27 (1958).)

Thus, to establish apparent authority, it is critical to find some words or conduct by the principal that could reasonably indicate consent.

■■ Although there was some indication that Ames was uncertain for whom he was working, he did testify that because Emmenegger's trailer was on the jobsite that he assumed he was working for it. Ames dealt exclusively with Alsbach, and they discussed matters pertaining to work, and particularly billing and payment, in Emmenegger's trailer. The bill for the January work was made out to "Emmenegger Const. Co.," and was submitted by Ames to Alsbach in the trailer. This bill was approved for payment by Leo Kuntz, Emmenegger's corporate vice president, and was later submitted for payment by Alsbach on an Emmenegger purchase order. If doubt existed as to Alsbach's authority to bind defendant, it was removed by Kuntz' action in approving the January bill for payment. This indicated consent by the principal (Emmenegger) to actions of its agent (Alsbach). In fact, it appears that the name "Emmark" was nowhere

present at the jobsite or on any documents. There is no indication that the actions taken by Alsbach were beyond his actual authority as job superintendent but, assuming they were, we find sufficient conduct on the part of Emmenegger which could reasonably cause Ames to believe that Emmenegger consented to the actions of Alsbach. Therefore, we find that Alsbach had apparent, if not actual, authority to bind Emmenegger to the contract in question.

Emmenegger argues that, if it is liable to Ames, it is only liable for work performed prior to February 11, 1974, because it terminated work on this date. To support this position, it places primary reliance on the daily log entry made by Alsbach. The only other supporting evidence is Kuntz' recollection. We find this argument to be untenable. Emmenegger's "Complaint to Foreclose on Mechanics Liens," verified by Kuntz as Emmenegger's vice-president, avers that work was performed through February 28, 1974. The evidence further reveals that Emmenegger's trailer remained on the jobsite until February 28 and that written notice of termination was not sent to Ames until March 21. It is undisputed that Ames completed work on the contract by February 22 and that this work was satisfactory. Therefore, the trial court properly assessed as damages the total contract price.

■■ The final issue we must address involves the trial court's award of prejudgment interest. The trial court found the refusal to pay the claim to be unreasonable and thus awarded interest at the statutory rate. (Ill. Rev. Stat. 1979, ch. 74, par. 2.) Emmenegger first asserts that the trial court only found the refusal to pay to be "unreasonable," whereas the statutory language requires a finding of "unreasonable and *vexatious* delay." We find that the mere failure of the trial court to trace the statutory language will not, in itself, defeat the award.

■■■ Emmenegger next asserts that a real dispute existed in this case in that the amount of damages was not readily ascertainable and therefore, prejudgment interest was improvidently awarded. An honest dispute as to the existence of a legal obligation will not result in an unreasonable and vexatious delay which would permit recovery of interest. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.) On the question of interest, the trial judge has discretion, according to the equities of the case, to award or deny interest as an element of recoverable damages, and interest will be allowed where such damages are liquidated or where they can be ascertained by simple and certain computation. (*Weiland Tool & Manufacturing Co. v. Whitney* (1968), 100 Ill. App. 2d 116, 241 N.E.2d 533.) In the instant case, the only question raised with regard to the amount of damages involved the dispute as to the date Emmenegger terminated work on the jobsite. Having already determined that defendant remained on the jobsite until

March 1, 1974, we now find, after review of the evidence, that no real dispute existed as to the termination date and therefore, damages were readily ascertainable.

■■ Emmenegger correctly states that where payment is delayed as a result of litigation, plaintiff must establish conduct by a litigant which approximates actual fraud to come within the statutory language. (*Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 342 N.E.2d 758.) The trial court, noting the interrelationship between Emmark Collaborative, Inc., and Emmenegger, and having observed the credibility and demeanor of the witnesses, found that payment was unreasonably withheld. Implicit in that finding is that no honest dispute existed and that fraudulent conduct on the part of Emmenegger was established. Considering the factual nature of these determinations, we defer to the discretion of the trial court. Therefore, we find that the trial court's determination that Emmenegger's failure to pay the claim was unreasonable as to justify an award of prejudgment interest was not contrary to the manifest weight of the evidence.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.