The SINGER COMPANY,
Plaintiff-Appellee,
Cross-Appellant,

v.

SKIL CORPORATION, Defendant-Appellant, Third-Party Plaintiff-Appellee,
Cross-Appellee,

v.

LUCERNE PRODUCTS, INC., Third-Party Defendant-Appellant, Cross-Appellee.

Nos. 85–1608, 85–1667 and 85–1701.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1986.
Decided Oct. 14, 1986.

Clarence J. Fleming, McDougall, Hersh & Scott, Chicago, Ill., for Skil Corp.

Richard J. Egan, Baldwin, Egan & Fetzer, Cleveland, Ohio, for Lucerne Products, Inc.

P. Phillips Connor, Hill, Van Santen, Steadman & Simpson, Chicago, Ill., for Singer Co.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

This case involves the resolution of five separate issues. Initially, Skil Corporation ("Skil") appeals a summary judgment granted to The Singer Company ("Singer") ordering that Skil repay Singer $161,367.56 in royalties which Singer mistakenly paid to Skil. Second, Singer appeals the district court's refusal to award Singer prejudgment interest and attorneys fees after its successful litigation against Skil. Third, Lucerne Products, Inc. ("Lucerne") appeals the trial court's grant of summary judgment on a third-party complaint brought against Lucerne by Skil requiring Lucerne to reimburse Skil in part for the royalties the court ordered Skil to return to Singer. Fourth, Lucerne appeals a summary judgment on Skil's second third-party complaint against Lucerne ordering Lucerne to pay Skil royalties for a period from the fourth quarter of 1977 through September 28, 1982 on a patent held by Skil. Finally, Lucerne appeals a dismissal of its crossclaim against Singer.

## I

The focal point of controversy in this case is a 1967 patent license agreement between Singer and Skil. This agreement was the product of a patent infringement action which Skil brought against Singer and others in 1966. Under the agreement, Singer agreed to pay royalties to Skil if Singer used products (switch units) covered by Skil's patent (the Gawron patent) as component parts in Singer products. The

agreement also provided that Singer would not have to pay royalties to Skil if Singer purchased switch units from a party Skil licensed to make patented switch units. Singer regularly purchased switch units from Lucerne. Lucerne was granted a license from Skil to manufacture and sell the switch units covered under Skil's patent.

In November 1970, Skil notified Singer that Skil's license agreement with Lucerne was cancelled, and thus Singer would have to pay royalties to Skil if Singer continued to use switch units purchased from Lucerne in its products. Singer began paying royalties to Skil, and sent a telegram to Lucerne informing Lucerne that Singer was now paying royalties to Skil.

Skil's November 1970 notice to Singer stating that Skil had cancelled its agreement with Lucerne was a result of a dispute between Skil and Lucerne over their license agreement. Lucerne disputed the validity of Skil's Gawron patent. Skil filed an action in the Northern District of Ohio ("the Ohio litigation") against Lucerne in 1968 to recover royalties due under its agreement with Lucerne. In 1974, Skil filed a second action against Lucerne for patent infringement. The second action was consolidated with the first. This litigation resulted in a ruling that Skil's patent was valid, that Lucerne was liable to Skil for royalties due under its agreement with Skil, and further that Skil was not entitled to cancel its license agreement with Lucerne. The court awarded Skil $294,079 in royalties for the time period from 1965 through the third quarter of 1977. *See Skil Corporation v. Lucerne Products, Inc.,* 489 F.Supp. 1129 (N.D.Ohio 1980), *aff'd* 684 F.2d 346 (6th Cir.1982), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982).

Singer discovered that Skil's purported cancellation of Lucerne's license to manufacture and sell switches covered under Skil's patent was ineffective and ceased making royalty payments to Skil in 1980. In 1982, Singer commenced the present litigation with the filing of an action against Skil to recover royalties it claims were mis-takenly paid to Skil between 1970 and 1980. Skil subsequently filed a third-party complaint against Lucerne seeking to force Lucerne to compensate Skil for any royalties it might have to return. Skil also filed a complaint against Lucerne in the Northern District of Ohio in 1982 seeking royalties under the Skil-Lucerne agreement for the period from the fourth quarter of 1977 to September, 1982 when Skil's Gawron patent expired. The court consolidated this case with the Singer-Skil litigation as the second count of Skil's amended third-party complaint against Lucerne in the Northern District of Illinois. On July 6, 1984, Lucerne filed a cross-claim against Singer alleging that Singer had agreed with Lucerne to pay all royalties directly to Skil for unit switches that Singer purchased from Lucerne.

On June 28, 1984, the district court granted Singer's motion for summary judgment against Skil. The court ordered Skil to repay Singer the royalties Singer mistakenly paid to Skil between 1970 and 1980. On February 7, 1985, the trial court granted Skil's motion for summary judgment against Lucerne on the first count of its third-party complaint. The court ordered Lucerne to reimburse Skil partially for the royalties that Skil was ordered to return to Singer. Further, the court granted Skil's motion for summary judgment on the second count of its third-party complaint against Lucerne, ruling that Lucerne was obligated to pay royalties to Skil for the period from the fourth quarter of 1977 through September 28, 1982. The court denied Singer's motion to amend the judgment entered against Skil for prejudgment interest. Finally, the district court granted Singer's motion to dismiss Lucerne's cross-claim for failure to state a claim upon which relief could be granted. The parties appeal each of these rulings.

## II

Skil appeals the judgment of the district court in favor of Singer ordering Skil to return the royalties Singer mistakenly paid to Skil. Initially, Skil asserts that the dis-

trict court erroneously interpreted the Singer-Skil license agreement. Sections 3.01 and 3.02 of the Singer-Skil license agreement state:

"3.01 Singer shall pay to Skil, at the times and in the manners provided in ARTICLE IV hereof, Royalties on all of its sales of Licensed Products after the effective date of this Agreement. Said Royalties shall be computed as follows:

(i) As to Licensed Products which incorporate Switch Units made by others than Singer, four (4%) per cent of the Net Purchase Price of said Switch Units; and

(ii) As to Licensed Products which include Switch Units made by Singer, four (4%) per cent or Licensee's Net Selling Price, as determined by Singer's usual methods of cost accounting, of such Switch Units.

3.02 Notwithstanding the provisions of Paragraphs 3.01(i) and 4.01 hereof, Singer shall not be obligated to pay to Skil any Royalties or render any reports thereon in respect of Licensed Products which include as component parts thereof Switch Units which Singer has purchased from a party licensed by Skil to make and sell Switch Units."

Skil argues that section 3.02 of the Singer-Skil license agreement relieves Singer of only the obligation to pay royalties directly to Skil. Skil maintains that under the agreement Singer was liable to Skil for royalties if Singer purchased products covered by Skil's Gawron patent (expired 9/28/82) from a licensed seller and that seller failed to pay the required royalties to Skil. The district court stated "[t]his novel interpretation of the license agreement would make Singer the guarantor of its vendors' obligation to Skil." Mem.Op. & Or. 6/28/84, p. 2. The trial court went on to say that "[t]here is no evidence of an intent that ¶ 3.02 would relieve Singer only of the need for *direct* payment when its vendor pays Skil." *Id.*

■ We agree with the district court that a plain reading of the agreement demonstrates that Singer did not have to pay royalties to Skil if Singer purchased switch units from a licensed supplier. In addition, Skil failed to present evidence establishing that the parties ever intended that Singer would be liable for any royalties Skil was unable to collect from its licensees. The district court stated "[t]here is no record evidence supporting Skil's argument [that Singer be liable for royalties for switch units purchased from licensed sources if Skil could not collect royalties from those sources] and the argument runs counter to the usual interpretation of such clauses." Mem.Op. & Or. 6/28/84, p. 7. The trial court went on to state that "[h]ad Singer assumed such a duty to insure payment of royalties to Skil by all other Skil licensees with whom it dealt, there would be evidence of Singer's intent to do so both in the language of the contract and the circumstance of its formation." *Id.* In *Joseph v. Lake Michigan Mortgage Company,* 106 Ill.App.3d 988, 62 Ill.Dec. 637, 436 N.E.2d 663 (1982), the court summarized the guidelines which the Illinois courts follow in construing contracts. The court stated:

"A contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it is presumed that every clause in the contract was inserted deliberately and for a purpose. It is well established that the primary objective in construing a contract is to give effect to the intention of the parties involved. The intention of the parties must be ascertained from the language employed in the instrument itself and where there is no ambiguity, from such language alone."

62 Ill.Dec. at 639, 436 N.E.2d at 665 (citations omitted). We agree that the district court's construction of the Singer-Skil agreement is proper under Illinois law, and it is evident that the court construed the license agreement as a whole and gave effect to the intentions of the parties.

Skil also argues that the trial court misapplied Illinois law to the facts in directing that Skil return to Singer the royalties Singer mistakenly paid to Skil. In *Bank of Naperville v. Catalano,* 86 Ill.App.3d 1005,

42 Ill.Dec. 63, 66, 408 N.E.2d 441, 444 (1980), the court stated:

"As a general rule, where money is paid under a mistake of fact, and payment would not have been made had the facts been known to the payor, such money may be recovered. The fact that the person to whom the money was paid under a mistake of fact was not guilty of deceit or unfairness, and acted in good faith, does not prevent recovery of the sum paid, nor does the negligence of the payor preclude recovery."

42 Ill.Dec. at 66, 408 N.E.2d at 444. The district court stated that "the key distinction is whether the underlying facts are fully known." Mem.Op. & Or. 6/28/84, p. 8. Singer seems to have assumed that the Skil-Lucerne license agreement was automatically cancelled at the time Skil notified Singer that the Skil-Lucerne agreement was no longer in effect in November, 1970. Singer paid Skil royalties from 1970 to 1980 even though Singer was not obligated to do so under its agreement with Skil since Singer was purchasing switches from a licensed source (Lucerne). Singer did not discover its error until it became aware of the outcome of the litigation between Skil and Lucerne in 1980. In *Skil Corporation v. Lucerne Products, Inc.*, 489 F.Supp. 1129 (N.D.Ohio 1980), the court held that Skil did not cancel its agreement with Lucerne.

■ On appeal, Skil relies on *Jursich v. Arlington Heights Federal Savings & Loan*, 110 Ill.App.3d 847, 65 Ill.Dec. 549, 441 N.E.2d 864 (1982). In *Jursich*, the court stated that "[a]s a general rule, money or property which is paid to another under a claim of right to payment, with full knowledge of the underlying facts, and absent fraud or coercion, cannot be recovered." 65 Ill.Dec. at 553, 441 N.E.2d at 866. The court also stated that "a party having full knowledge of the facts, and access to a written instrument, may not reasonably rely on representations of other contracting parties respecting the effect of the written instrument." *Id.* 65 Ill.Dec. at 555, 441 N.E.2d at 868. In the present case, Singer did not have access to the Skil-Lucerne

agreement and relied only on Skil's representations concerning the agreement. The trial court found that Singer had no knowledge of the fact that the Skil-Lucerne agreement was still in effect. Mem.Op. & Or. 6/28/84, p. 8. Under Illinois law, because Singer was not aware that the Skil-Lucerne agreement was operative, Singer is entitled to recover the royalties mistakenly paid to Skil.

### III

The Singer Company appeals the district court's denial of prejudgment interest and attorney fees. Singer argues that it is entitled to prejudgment interest pursuant to Section 2 of the Illinois interest statute, Ill.Rev.Stat.1983 ch. 74, par. 6402, now appearing at Ill.Rev.Stat.1985 ch. 17, par. 6402. The statute states:

"§ 2. Creditors shall be allowed to receive at the rated five (5) per centum per annum for all moneys after they become due on any bond bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement account from the day of liquidating accounts between the parties and ascertaining the balance on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."

Ill.Rev.Stat.1985 ch. 17, par. 6402.

■ Singer in its argument relies on *Chicago Title and Trust Co. v. First Arlington National Bank*, 118 Ill.App.3d 401, 73 Ill.Dec. 626, 454 N.E.2d 723 (1983). In *Chicago Title and Trust Company*, the court awarded prejudgment interest in an action based on fraud and deceit. In construing the Illinois interest statute, the court said that "this portion of § 2 has been interpreted [by the Illinois courts] as providing that 'where property has been wrongfully taken, or converted into money, and an action of trespass or trover may be maintained, interest may properly be recovered.'" *Id.*, 73 Ill.Dec. at 634, 454 N.E.2d at 731. Singer's reliance on *Chicago Title*

*and Trust Co.*, is misplaced as that case dealt with a question of fraud and deceit and, in the present case, the trial court made a specific finding that Skil, in its dealings with Singer, had not acted fraudulently. In *Emmenegger Construction Co., Inc. v. King*, 103 Ill.App.3d 423, 59 Ill.Dec. 237, 431 N.E.2d 738 (1982), the court stated that "where payment is delayed as a result of litigation, plaintiff must establish conduct by a litigant which approximates actual fraud to come within the statutory language." 59 Ill.Dec. at 243, 431 N.E.2d at 744. The court also said "[a]n honest dispute as to the existence of a legal obligation will not result in an unreasonable and vexatious delay which would permit recovery of interest." *Id.*, 59 Ill.Dec. at 242, 431 N.E.2d at 743. The district court concluded that "a good faith dispute existed as to the rights of the respective parties and that Skil's conduct does not support a finding of unreasonable and vexatious conduct." Mem.Op. and Or. 2/7/85, p. 4. In *Emmenegger*, the Illinois Appellate Court, Fifth District emphasized that "[o]n the question of interest, the trial judge has discretion, according to the equities of the case, to award or deny interest as an element of recoverable damages." 59 Ill.Dec. at 243–43, 431 N.E.2d 743–44. In *Finley v. Finley*, 81 Ill.2d 317, 43 Ill.Dec. 12, 410 N.E.2d 12, 19 (1980), the Illinois Supreme Court stated "the allowance of interest lies within the sound discretion of the trial judge and is allowed where warranted by equitable considerations and is disallowed if such an award would not comport with justice and equity." *Id.* In light of the Illinois courts' interpretation of the Illinois interest statute and the trial court's findings, we hold that Singer was not entitled to prejudgment interest.

Singer likewise appeals the district court's denial of attorney fees maintaining that Skil was acting in bad faith because "Skil unreasonably and without cause refused to refund the sums paid by mistake which made this action necessary." Appellant Singer Brief at 14. Singer relies on *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). In *Hall*, the United States Supreme Court stated that "[a]lthough the American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Id.* at 4–5, 93 S.Ct. at 945–46. The Court continued stating that "it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 5, 93 S.Ct. at 1946. In *Satoskar v. Indiana Real Estate Commission*, 517 F.2d 696, 698 (7th Cir.1975), the court stated "[t]he standards for bad faith are necessarily stringent." The trial court concluded that "a good faith dispute existed as to the rights of the respective parties and that Skil's conduct does not support a finding of unreasonable and vexatious conduct." Mem.Op. & Or. 2/7/85, p. 4. In *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1006 (7th Cir.1984), the court said "[a]n award of attorneys' fees is entrusted to the district court's discretion; we may review the award of fees for an abuse of that discretion." Since Skil raised its defenses to Singer's claims in good faith, we affirm the district court's denial of attorney fees.

## IV

Lucerne appeals the district court's grant of summary judgment on Skil's third-party complaint against Lucerne requiring Lucerne to partially reimburse Skil for the royalties which Skil must return to Singer. The trial judge ruled that "Skil is entitled to recover these royalties for the reasons stated in the Ohio litigation and in this court's prior rulings." Mem.Op. & Or. 2/7/85, p. 4. In a prior ruling denying Lucerne's motion for summary judgment on the same complaint, the trial judge stated that "the protracted Ohio litigation conclusively established the rights of Lucerne and Skil under the 1965 license agreement." Mem.Op. & Or. 12/22/83, p. 5. The court continued stating that "Skil did

not waive its claims to royalties due from Lucerne on sales to Singer by failing to include those units in its damage computation [in the Ohio litigation]." *Id.* In *Skil Corporation v. Lucerne Products, Inc.,* 489 F.Supp. 1129 (N.D.Ohio 1980), the court held that Skil was not entitled to cancel its license agreement with Lucerne and further that Lucerne was required to pay royalties to Skil under the agreement.

The Skil-Lucerne license agreement was the basis of the district court's decision that Lucerne must reimburse Skil. *See* Mem.Op. & Or. 2/7/85, p. 4. Skil previously did not seek to recover royalties from Lucerne for Lucerne's sales of switches to Singer because Singer had paid the royalties. In fact Lucerne was the only party legally obligated to pay royalties to Skil because of its agreement with Skil. Singer in effect mistakenly paid Lucerne's debt to Skil. Because Skil must now return to Singer the royalty payments which Singer made by mistake, Skil is entitled to collect the royalty payments from Lucerne. Under the Singer-Skil license agreement, Singer was obligated to pay a four percent royalty on switches for products it purchased from unlicensed sources. Under the Skil-Lucerne license agreement Lucerne was obligated to pay a royalty of three percent of the sales price of patented switches it sold. Singer mistakenly paid $161,367.56 to Skil, four percent of the sales price of the switches Singer purchased from Lucerne. Thus, Skil is obligated to return $161,367.56 to Singer. However, pursuant to the Skil-Lucerne agreement Lucerne is obligated to pay Skil $121,025.69, three percent of the sales price of the switches it sold to Singer.

On appeal, Lucerne argues that it "is not obligated to return to Skil any part of the 'Singer royalties' which the Court has ordered Skil to return to Singer as a consequence of its (Skil's) negligent and/or improper demand upon Singer." Third-Party Defendant-Appellant Brief at 19. Lucerne bases its argument on a negligence theory and cites cases dealing with the indemnification of negligent parties. *Id.* In contrast, the district court relied solely upon

the Skil-Lucerne license agreement. The fact that Skil received payments from Singer in error has nothing to do with Lucerne's contractual obligations to Skil. Lucerne is not required to indemnify Skil for Skil's negligence as Lucerne argues but is obligated to pay Skil the royalties properly due Skil pursuant to the Skil-Lucerne license agreement. Accordingly, we affirm the district court's decision awarding the royalty payments to Skil.

**V**

Lucerne also appeals the district court's summary judgment on the second count of Skil's third-party complaint against Lucerne ordering Lucerne to pay Skil royalties for the period from the fourth quarter of 1977 through September 28, 1982. In the Ohio litigation, Skil recovered royalties under its license agreement with Lucerne for a period beginning in 1965 and running through the third quarter of 1977. Skil initiated a suit in the northern district of Ohio to recover royalties which accrued subsequent to the third quarter of 1977. That claim was consolidated in the present case.

On appeal, Lucerne maintains that Skil's claim is barred by the doctrine of *res judicata.* The district court stated that "the doctrine of *res judicata* will not extinguish claims based on activity which takes place after the date of events which are the basis for entry of a judgment." *Id.* at 5–6. In rendering its decision in the present case, the district court stated that "Lucerne's accounting records were current only through that period which was prior to the trial in the summer of 1978 [the Ohio litigation] that resulted in a 1980 decision by the district court." Mem.Op. & Or. 2/7/85, p. 5. The district court continued "Skil's damages in the Ohio litigation were premised on sales made by Lucerne through the fourth quarter of 1977." *Id.* at 6. The Skil-Lucerne license agreement remained in effect until the 28th of September, 1982. In *Ohio-Sealy Mattress Manufacturing Company v. Kaplan,* 745 F.2d 441 (7th

Cir.1984), this court said that "[r]es judicata makes a final judgment conclusive as to the parties on all issues of fact and law that were litigated or could have been litigated." *Id.* at 452. The trial court in the present case found that "Skil was not required either to estimate Lucerne's sales or to assume that Lucerne would not remit royalty payments on subsequent sales especially after the Ohio litigation was determined against Lucerne." Mem.Op. & Or. 2/7/85, p. 6. In *Lawlor v. National Screen Service*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), the United States Supreme Court said that while a "judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* at 328, 75 S.Ct. at 868. Accordingly, we affirm the district court on this issue.

## VI

Lucerne next appeals the district court's dismissal of its cross-claim against Singer to recover from Singer any past royalties which Lucerne may be required to pay Skil. A trial court may grant an order of summary judgment only when there is no genuine issue of material fact. The court must look beyond the arguments of the parties and resolve all doubt over factual issues in favor of the party opposing the summary judgment. *Gracyalny v. Westinghouse Electric Corp.*, 723 F.2d 1311, 1316 (7th Cir.1983). Lucerne maintains that a telegram sent by Singer to Lucerne on November 30, 1970 "stands as a bilateral contract between Singer and Lucerne that is wholly separate from any other agreement and whereby Singer has agreed to pay Skil the royalties for *all* switches purchased by Singer from Lucerne." Brief of Third-Party Defendant-Appellant, p. 32. The telegram stated:

"Confirming our conversation of 11–27–70 Gene Hollard and I authorized you to continue to ship speed control switches to Singer Pickens we are aware that the licensing agreement between Skil and Lucerne has been rescinded. On ship-

ments on and after 11–27–70 until further notification the Singer Company Power Tool Division Pickens South Carolina will be responsible for royalty payments to Skil you will maintain a record of all shipments on or after 11–27–70

David Brezeale materials manager The Singer Company PTD Pickens Socar."

■ After Singer sent the telegram to Lucerne, Singer began to pay a four percent royalty to Skil under the Singer-Skil license agreement for switches purchased from Lucerne. The trial court concluded that "[t]he telegram on which Lucerne bases its indemnity claim is not an undertaking to be responsible for any claim Skil might have against Lucerne under the Skil-Lucerne agreement." Mem.Op. & Or. 2/7/85, p. 7. The telegram cited above merely states that Singer will begin paying royalties to Skil. Singer asserts that it sent the telegram to Lucerne after receiving notice from Skil that the Skil-Lucerne license agreement was cancelled because Singer was interested in having Lucerne to continue their business relationship of supplying switches. Singer maintains that the telegram only "expresses Singer's intention to pay a royalty to Skil, as required under the Skil-Singer license agreement for products purchased from an unlicensed source." Appellee's Brief, p. 12.

The trial judge also noted that "prior to the filing of its cross-claim, Lucerne took the position in this litigation that it did not have an indemnity agreement with Singer." Mem.Op. & Or. 2/7/85, p. 7. Lucerne filed an answer to the amended third-party complaint on January 25, 1984 and pleaded as an affirmative defense:

"That Third-Party Defendant Lucerne further denies that a contract of indemnity or warranty exists between: (a) Lucerne and Singer; (b) Lucerne and Skil; or (c) Lucerne and any third party with respect to the Skil-Singer Agreement of January 1, 1967, and/or to any goods sold or other unit transferred by Lucerne to Singer."

Lucerne argues that the Singer telegram must not be read in isolation but rather must be read in the context of the negotiations between Singer and Lucerne over the price for switches. On November 10, 1970, Lucerne quoted Singer a price of $2.49 per switch, and Singer paid this price through 1971. Because Singer sent the telegram to Lucerne on November 30, 1970, Singer argues that the telegram did not represent a promise of Singer in exchange for a lower price of Lucerne. The record contains no specific reference to a contract requiring Singer to indemnify Lucerne.

■ In its brief, Lucerne also states that two patents were involved in the 1970 negotiations between Singer and Lucerne with respect to the purchase of switches and that Lucerne advised Singer that Singer was responsible for securing permission from Skil to use the Lucerne switches. Because two patents were involved, Lucerne somehow reasons, Singer must have undertaken to indemnify Lucerne for royalties due Skil. See Lucerne Brief at 33. Lucerne's argument is unclear. Lucerne does not point to any express undertaking by Singer to be responsible for Lucerne's obligation to pay royalties. The mere fact that two patents were involved in the negotiations between Lucerne and Singer and that Lucerne advised Singer to secure Skil's permission to use the Lucerne switches does not give rise to a contract to indemnify Lucerne for royalties under the Gawron patent license at issue in this case.

■ Finally, Lucerne quotes a letter it received from Singer's patent counsel on November 30, 1970. The letter states:

"This letter will confirm that The Singer Company is licensed by Skil Corporation under United States Patent No. 3,209,228 (Gawron). The pertinent terms of the subject license agreement provide that if The Singer Company purchases trigger speed control switches from a licensed source, no royalty is due, but if such purchases are made from an unlicensed source, then The Singer Company is obligated to make certain royalty payments to Skil.

Lucerne Products, Inc. had been a licensee of Skil's under the said Gawron patent. However, Skil has just notified The Singer Company that it has cancelled its license with Lucerne under the said Gawron patent. This makes Lucerne Products, Inc. an "unlicensed source" under the terms of the license agreement between Skil and The Singer Company. In view of the pending litigation between Skil and Lucerne, for past royalties which Skil feels is due it for speed control switches which Lucerne is marketing, of which we make no comment, we wanted to establish the date of November 27, 1970, as the date on which the status of Lucerne Products, Inc. changed from a licensed source to an unlicensed source under the terms of the license agreement between Skil and The Singer Company. Accordingly, any purchases from Lucerne of trigger speed control switches, including Model Series TSC 254, on and after Friday, November 27, 1970, will obligate The Singer Company, under its license agreement with Skil to make royalty payments to Skil for such purchases."

The letter fails to state that Singer intends to indemnify Lucerne for royalties to be paid to Skil. The district court stated that "[t]he court cannot find in the conduct of the parties any express or implied agreement by Singer to indemnify Lucerne." Mem.Op. & Or. 2/7/85, p. 8. Resolving all issues of fact in favor of Lucerne, there is no evidence of any agreement between Lucerne and Singer with regard to royalty payments. We affirm the district court's grant of summary judgment to Singer.

## VII

We affirm the district court's judgment ordering Skil to return the royalties Singer mistakenly paid to Skil. We also affirm the trial court's denial of attorney fees and prejudgment interest to Singer. We hold that the district court properly granted summary judgment to Skil on both counts of Skil's third-party complaint against Lucerne, requiring Lucerne to partially reim-

burse Skil for the royalties which Skil must return to Singer and ordering Lucerne to pay Skil royalties for the period from the fourth quarter of 1977 through September 28, 1982. Finally, we hold that the trial court appropriately dismissed Lucerne's cross-claim against Singer.