**MERRILL LYNCH MORTGAGE CORPORATION, a New York corporation, as general partner of Merrill Lynch Realty Operating Partnership, L.P., a Delaware limited partnership, Plaintiff–Appellee,**

v.

**Satendra NARAYAN and Sudha Narayan, his wife, citizens and residents of New Jersey, Defendants–Appellants.**

No. 89–1489.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1990.

Decided July 30, 1990.

---

248

John T. Schriver and Fred I. Feinstein, McDermott, Will & Emery, Chicago, Ill., for plaintiff-appellee.

Enrico J. Mirabelli, Amari, Mirabelli & Associates, Chicago, Ill., for defendants-appellants.

Before BAUER, Chief Judge, and CUMMINGS, Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

This is an appeal from the district court's entry of default and default judgment against the defendants, Satendra and Sudha Narayan, ("the Narayans"), for their failure to file an Answer and for their repeated failures to attend scheduled court dates in this fraudulent misrepresentation case. Also on appeal is the district court's denial of a Fed.R.Civ.P. 55(c) motion to set aside the entry of default and the court's denial of a Fed.R.Civ.P. 60(b) motion to vacate the default judgment.

On January 21, 1988, Merrill Lynch Mortgage Corp.[1] ("Merrill Lynch") filed a two-count complaint against the Narayans in federal district court, alleging fraudulent misrepresentation and breach of contract in the resale of a residence located at 11 Delaine Drive, near Illinois State University in Normal, Illinois. The complaint alleged the following facts: on August 13, 1985, the Narayans entered into a contract to purchase the multi-story residence near Normal. At the time, the property was rented out as a student rooming house in violation of its zoned use as a single-family residence. The Narayans unsuccessfully attempted to obtain a zoning variance. To purchase the residence, the Narayans obtained a mortgage loan from Olympic Federal Savings & Loan for $43,600 based on the written contract which stated that the purchase price was $62,000; the Narayans actually paid only $35,000 for the home. The Narayans thereafter rented rooms to students until late in 1986.

Merrill Lynch became involved in the property when Satendra Narayan accepted a transfer in employment from Illinois to New Jersey early in 1987. Merrill Lynch agreed to purchase the residence from the Narayans. In the contract with Merrill Lynch, the Narayans "guaranteed" that they would not state incorrectly or fail to state any fact regarding any condition affecting the property that if known would affect the property's value. The Narayans also "guaranteed" in writing that the continued use of the property for the same purposes and use in the same manner would not violate zoning ordinances. The contract further provided that if any of the information the Narayans supplied to the appraisers was incorrect, the price would be subject to adjustment. Two appraisers met with Satendra Narayan during March, 1987 and determined that the fair market value of the property was between $62,000 (as a "duplex"), and $62,500 (as a nonconforming single-family residence). Narayan did not inform the appraisers of the price he actually paid for the property nor did he discuss the zoning violation. Narayan did, however, inform one appraiser that he paid $62,000 for the residence and also called him, explaining that the third floor of the

1. Merrill Lynch Mortgage Corp. succeeded Merrill Lynch Relocation as the party in interest.

home could be used for additional student housing. Narayan presented the other appraiser with a copy of his original settlement statement which listed that the Narayans paid $62,000 for the residence.

In May, 1987, Merrill Lynch purchased the property from the Narayans for $62,250. In 1988, the Narayans' tax return for the year of the purchase and sale, 1987, showed a capital gain of $20,813 on the sale of the residence to Merrill Lynch. In listing the property for resale at $62,250, Merrill Lynch for the first time learned that the use violated local zoning ordinances. Merrill Lynch's appraisers reappraised the property, concluding that its fair market value as a single-family residence was between $40,000 and $41,500. On August 11, 1987, Merrill Lynch contracted to sell the property to a third party for $34,500.

Merrill Lynch filed its complaint and personally served the Narayans with a Summons and Complaint on February 12, 1988. The district court set a status hearing for March 18, 1988, and asked counsel for Merrill Lynch to inform any defendants of the hearing. On March 14, 1988, Merrill Lynch's counsel wrote a letter to defendants' attorney, Attillio Fiumetto of Amari, Mirabelli & Associates, advising counsel of the hearing date. In the letter, Merrill Lynch also informed the defendants that an Appearance and Answer were due prior to March 18, 1988, and stated that if not received by then, Merrill Lynch would move for an entry of default. On March 15, 1988, Enrico Mirabelli of Amari, Mirabelli & Associates filed an appearance on behalf of the defendants.

On March 18, 1988, counsel for Merrill Lynch appeared before Judge Williams for the status hearing, requesting a delay of the hearing since the Narayans' attorney had informed counsel by phone that he would be late. When the Narayans, by their attorney, failed to appear by the end of the call, Judge Williams asked for a status report of the case from Merrill Lynch's counsel. The court then ordered an informal exchange of documents and required Merrill Lynch to make a demand on the Narayans prior to the pre-trial conference. The same day, counsel for Merrill Lynch wrote to Mirabelli advising him of the court's instructions and again requesting that the defendants file an answer. On April 18, 1988, counsel for both parties met at Mirabelli's office and exchanged documents. At that time, Merrill Lynch made a demand on the defendants but Mirabelli stated that he only had authority to recommend a nominal settlement.

On May 17, 1988, the district court sent notice to the parties of a June 10, 1988 pre-trial conference. On June 7, 1988, counsel for the Narayans informed Merrill Lynch's counsel that "I will be out of town on June 10, 1988 but one of my associates will appear at the pre-trial." Merrill Lynch appeared by counsel but no one appeared for the Narayans. The court continued the pre-trial hearing until June 17, 1988 and mailed notices to the parties. On June 15, 1988, Merrill Lynch informed the Narayans' counsel by hand-delivered letter of the revised pre-trial date. Mirabelli again failed to appear. The district court reset the pre-trial conference for July 1, 1988, and again mailed notices to the parties. Merrill Lynch additionally sent a letter to Mirabelli, informing him of the new date. Merrill Lynch also spoke by telephone with Mirabelli's secretary, confirming the time and date of the pre-trial conference and Mirabelli's knowledge of it.

Neither the Narayans nor their counsel appeared before Judge Williams for the pre-trial conference on July 1, 1988. Counsel for Merrill Lynch, who did appear, called Mirabelli's office which informed him that Mirabelli was en route. After forty-five minutes, counsel for Merrill Lynch once again called Mirabelli's office, and found Mirabelli there. The district court then conducted the pre-trial conference by telephone.

At the next status hearing on July 7, 1988, which both parties attended, Merrill Lynch filed a motion for entry of default against the Narayans for their failure to answer the complaint or otherwise plead. Merrill Lynch also filed a motion for sanctions and attorney's fees. The Narayans, by their counsel, sought and were granted

leave to respond to the motion. On July 22, 1988, the Narayans filed their response and attached documents which they claimed were "pleadings" they had delivered to Merrill Lynch on April 18, 1988. On August 11, 1988, the district court conducted a hearing on the motion but neither Mirabelli nor any other person appeared on behalf of the Narayans. The district court concluded the hearing by granting Merrill Lynch's motion for entry of default.

On August 25, 1988, counsel for both parties appeared, and the court, on Mirabelli's request, granted the Narayans until September 28, 1988 to file a response to Merrill Lynch's motion for default judgment which was filed earlier. On September 28, 1988, Mirabelli filed a motion for an extension of time in which to file the response, and supplied a certificate of service to Merrill Lynch on that date. Merrill Lynch states that it did not receive notice, and therefore, it filed a second memorandum in support of its motion for default judgment. On October 20, 1988, the Narayans filed their response. On December 16, 1988, the district court informed the parties by minute order that it would rule on Merrill Lynch's motion for default judgment on January 13, 1989. On January 12, 1989, however, the Narayans filed a Fed.R.Civ.P. 55(c) motion to set aside the August 11 entry of default. In addition, the Narayans sought leave to file a draft answer to the complaint.

On January 13, 1989, the district court granted a default judgment against the Narayans. As for damages, the court concluded that the selling price of $34,500 was not abnormally low, and that Merrill Lynch was entitled to the difference between the price it paid ($62,250) and its selling price. In addition, the court found that Merrill Lynch was entitled to its carrying costs ("the costs for maintaining the property until it could be sold to a third-party") because these damages "flow directly from the breach and are recoverable." Also, the court awarded pre-judgment interest to Merrill Lynch because the damages were "easily ascertainable." *See Emmenegger Construction Co., Inc. v. King,* 103 Ill.App.3d 423, 59 Ill.Dec. 237, 431 N.E.2d 738 (5th Dist.1982). The court asked plaintiff to submit a statement of its carrying cost and pre-judgment interest. Finally, the court doubled the contract damages as a punitive measure, stating that "[t]he court considers the nature of the Narayans' fraudulent acts to be well thought out and continuing over several years with several victims." *See Home Sav. & Loan Ass'n v. Schneider,* 108 Ill.2d 277, 91 Ill.Dec. 590, 483 N.E.2d 1225 (1985).

On the afternoon of its January 13, 1989 ruling, the court received the Narayans' Rule 55(c) motion. On January 17, 1989, the court determined that the default judgment against the Narayans would stand and denied consideration of the defendants' motion under Rule 55(c), stating that it was an "egregiously tardy filing" and typical of the conduct of the Narayans' attorney. On January 19, 1989, Merrill Lynch submitted its revised Statement of Damages in an amount totalling $35,895.54. The district court doubled this amount to reflect the punitive damage award and entered judgment in the amount of $72,091.08. On February 6, 1989, the Narayans filed a motion to vacate the default judgment under Fed.R.Civ.P. 60(b) which the district court denied.

 Jurisdiction of the case in the district court was based on diversity of the parties. We have jurisdiction in this appeal over the district court's entry of default and default judgment against the Narayans, in addition to the district court's denials of the Narayans' motions under Fed.R.Civ.P. 55(c) and 60(b). *See Anilina Fabrique de Colorants v. Aakash Chemicals,* 856 F.2d 873, 876 (7th Cir.1988) (citing *Chrysler Credit Corp. v. Macino,* 710 F.2d 363, 366–67 (7th Cir.1983) and *In re Kilgus,* 811 F.2d 1112, 1118 (7th Cir.1987)). Our standard for reviewing an entry of default and a default judgment are the same: "abuse of discretion." *United States v. DiMucci,* 879 F.2d 1488, 1493 (7th Cir. 1989); *Anilina Fabrique de Colorants,* 856 F.2d at 876 (citations omitted). We review the denial of motions to vacate or set aside these rulings also under an "abuse of discretion" standard. *See Hal*

*Commodity Cycles Management Co. v. Kirsch*, 825 F.2d 1136, 1138 (7th Cir.1987) (citing *Tolliver v. Northrop Corp.*, 786 F.2d 316, 318–19 (7th Cir.1986), and *Inryco, Inc. v. Metro. Eng'g Co.*, 708 F.2d 1225, 1230 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983)). To reverse the district court for an abuse of discretion, we must conclude that no reasonable person could agree with the trial court's judgment. *See Hough v. Local 134, IBEW*, 867 F.2d 1018 (7th Cir.1989).

■ In this case, it is clear that the district court did not abuse its discretion in ordering the entry of default on August 11, 1988. First, at the time the court ruled, the Narayans had not filed an answer or other pleading in response to Merrill Lynch's complaint despite its request to do so on at least two occasions. Although the Narayans contend on appeal that they submitted "responsive pleadings" to Merrill Lynch on April 18, 1988, counsel for the Narayans concedes that these documents were not submitted to the district court prior to the July 22, 1988 hearing. By July 22, Merrill Lynch had already filed its motion for entry of default and the court had allowed the defendants until that date to respond to the motion. By this time, more than four months had passed since Mirabelli filed his appearance on behalf of the Narayans, and six months had passed from the time the defendants received the service of summons. Furthermore, as the record reveals and Merrill Lynch contends, the documents submitted by Narayans' counsel on July 22 did not represent "pleadings" or an answer. The court did not accept these documents as responsive to the motion for entry of default. At most, these represented a further source of delay in the case by requesting a more definite statement and a motion to dismiss.

Throughout the proceedings in this court and in the district court, the Narayans contended that they delayed in filing an answer to the complaint due to ongoing negotiations. Merrill Lynch's counsel refuted this claim and Mirabelli himself conceded at oral argument that only one settlement discussion took place when the attorneys met on April 18, 1988. From all appearances, no other action was taken by the Narayans until Merrill Lynch filed its motion for entry of default. Thus, there is no basis for considering negotiations as affecting the course of this litigation.

The defendants also argue that Merrill Lynch "acquiesced" in their failure to file a response. Merrill Lynch disagrees. As the record reveals, Merrill Lynch notified Mirabelli on at least two occasions that if the response or answer was not forthcoming, it would move for default. This does not evidence acquiescence on Merrill Lynch's part. The Narayans also argue that Merrill Lynch did not act swiftly in pursuing default. Although Merrill Lynch did not seek the default order until July 7, Merrill Lynch did give the Narayans notice of its intentions, and it was mere assumption on defense counsel's part that Merrill Lynch would not seek the default. In any event, no act by Merrill Lynch could relieve the Narayans of their responsibility to comply with the federal rules of practice and procedure. *See* Fed.R.Civ.P. 12(a).

As the record reveals, the Narayans' conduct was deficient in other respects. In addition to the failure to file a response to the complaint, the Narayans, through their attorney, failed to make several court appearances and status calls. In oral argument, and his reply brief, Mirabelli referred to other times that he attempted to make appearances or that he arranged with Merrill Lynch for continuances. In this respect, we rely solely on the record from the district court. In addition to the several status hearings which he missed, Mirabelli conspicuously was absent from court on August 11, 1989, the date Judge Williams issued the entry of default. As Merrill Lynch points out, though, what is most egregious in this case is that the district court gave the Narayans an opportunity to respond to the motion for the entry of default, and although they filed such a response, it did not set forth any "good cause" for their delay in filing an answer.

Finally, although the Narayans contend that the district court failed to impose a lesser sanction prior to the entry of de-

fault,[2] we have held that "the district court is not required to fire a warning shot." *Hal Commodity Cycles Mgmt. Co.*, 825 F.2d at 1139. This conduct is simply unacceptable and we conclude that the district court properly exercised its discretion in entering default against the Narayans.

Rule 55(c) states "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(c). Under Rule 55(c), a district court may set aside its ruling prior to entry of a default judgment if the party seeking vacation of the order presents the following: "(1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *Di-Mucci*, 879 F.2d at 1495 (citing *Breuer Elec. Mfg. Co. v. Toronedo Sys. of Am., Inc.*, 687 F.2d 182 (7th Cir.1982)).

█ In this case, the Narayans failed to file a Rule 55(c) motion until January 12, 1989, only one day prior to the district court's scheduled ruling on the motion for default judgment. Due to the lateness of the filing, the district court did not receive the motion until after the court made its decision to enter a default judgment. Since the motion was filed prior to the *entry* of the default judgment, the motion is still properly considered as brought pursuant to Fed.R.Civ.P. 55(c). *See Chrysler Credit Corp.*, 710 F.2d at 364 n. 1. In addition to the late filing of the Rule 55(c) motion, the defendants did not attempt to file an answer (originally due nearly a year earlier) until they filed the Rule 55(c) motion. On this basis alone, certainly, the district court was in a position to refuse to consider the motion.

█ The defendants argue that they did not file a Rule 55(c) motion initially because of the district court's order which allowed them to respond to the motion for entry of default on the issue of damages. Mirabelli argues that he felt it would not be well-received on the heels of Judge Williams' ruling. In any event, attorneys practicing in the federal courts are obligated to be aware of the requirements of the Federal Rules of Civil Procedure, including Rule 55(c). Mirabelli failed, on these facts, to file a *timely* motion showing that the Narayans acted quickly to cure the default and that they had good cause for it in the first place. Without this, the district court had no recourse but to deny the "egregiously tardy" motion. In addition, no showing was made that any meritorious defense existed although the response alluded to that possibility. This was much too little too late. Mirabelli concedes that he should have filed the motion earlier. In light of all of these facts, we conclude that the district court did not abuse its discretion in refusing to consider the motion.

█ The reasons which support the district court's decision to issue the entry of default likewise support its decision to enter a default judgment against the Narayans. We note that "[t]he grant ... of a motion for the entry of a default judgment lies within the sound discretion of the trial court and will be reversed only for an abuse of that discretion." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1322 (7th Cir.1983). At the time the district court *ruled* on the motion for default judgment, January 13, 1989, the Narayans had yet to file an answer, had presented no reason for the court to refrain from entering judgment against them, and had offered no explanation or justifiable excuse for their conduct. Between the entry of default and the default judgment, several months passed without any action by the Narayans whatsoever. The defendants did file a response to the motion for default judgment but that response contained no basis for the district court to reverse its earlier entry of default. The response only made assertions against Merrill Lynch without any grounding in facts which would support the Narayans' defense of the action. In this respect, we note that *Anilina Fabrique de Colorants*, 856 F.2d at 880–81, the recent case in this court on which the appellants

---

2. We note that the court did issue sanctions in the form of attorney's fees at the same time that it ordered the entry of default. This does not affect our decision.

strongly rely, is a far cry from the present case. Based on all the facts, we conclude that the district court acted within its discretion in entering the default judgment.

■ The district court's decision to deny a motion under Fed.R.Civ.P. 60(b) amounts to "discretion piled on discretion." *Tolliver*, 786 F.2d at 319. The remedy provided by the granting of a Rule 60(b) motion is intended to be reserved for "exceptional circumstances," of excusable neglect, inadvertence or otherwise. *See id.* at 319; *North Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co.*, 842 F.2d 164, 167 (7th Cir.1988). As the district court noted in its denial of the Rule 60(b) motion, the Narayans failed to allege any "good cause" for vacating the default judgment. The Narayans' counsel did not show either excusable neglect or inadvertence in failing to file, in a timely fashion, the documents which were required to conduct this case in the district court. We conclude that the district court acted within its discretion in refusing to grant the Narayans' Fed.R.Civ.P. 60(b) motion.

■ Finally, in the case of a default, this circuit follows the rule that "the well-pleaded allegations of the complaint relating to liability are taken as true," and those "relating to the amount of damages suffered ordinarily are not." *DiMucci*, 879 F.2d at 1497 (citing *Dundee Cement Co.*, 722 F.2d at 1323). Damages must be proved unless they are liquidated or capable of calculation. *See DiMucci*, 879 F.2d at 1497 (citing *Dundee Cement Co.*, 722 F.2d at 1323). In addition, this court "will not ... disturb[ ]" the amount of damages awarded in a default judgment "unless the award is clearly excessive." *Douglas v. Metro Rental Services, Inc.*, 827 F.2d 252, 256 (7th Cir.1987). Based on the district court's judgment order, we conclude that it properly assessed damages for the sale of the residence, the carrying costs and the pre-judgment interest since those costs were incurred as a result of the Narayans' actions and were liquidated.

■ Nevertheless, we do not sustain the grant of punitive damages in this case. We are aware that Illinois law allows for the recovery of punitive damages for the type of conduct in which the Narayans engaged (which is accepted here as true for purposes of the default). *See Home Sav. & Loan Ass'n v. Schneider*, 108 Ill.2d 277, 91 Ill.Dec. 590, 483 N.E.2d 1225 (1985). The purpose behind default judgments, however, is to allow district courts to manage their dockets efficiently and effectively. *See Douglas*, 827 F.2d at 256. Although the Narayans themselves had engaged in unconscionable conduct in their relations with Merrill Lynch regarding the property, in which respect Merrill Lynch has been made whole by full compensatory damages, and although the conduct of counsel was censorious, we decline in this default judgment case to affirm the punitive damages. We are not saying that awarding punitive damages on a default judgment is never appropriate, but here, we regard the punitive damages as being in excess of what is required. In view of this, we vacate that portion of the judgment providing for punitive damages. As for all other matters, the district court's entry of default and default judgment are affirmed, as are the court's denial of the Narayans' motions under Fed.R.Civ.P. 55(c) and 60(b). The parties are to bear their own respective costs for this appeal.

PUNITIVE DAMAGES AWARD VACATED. AFFIRMED ON ALL OTHER GROUNDS.