Joseph D. GIACOLETTO, Sr., Plaintiff–Appellee,

v.

AMAX ZINC COMPANY, INC., Defendant–Appellant.

No. 91–1988.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1991.

Decided Jan. 16, 1992.

James R. Dankenbring, Francis E. Pennington, III, argued, Green, Hoffmann & Dankenbring, St. Louis, Mo., for Joseph D. Giacoletto, Sr.

David W. Welch, Robert A. Kaiser, Daniel K. O'Toole, James M. Talent, argued, Lashly & Baer, St. Louis, Mo., for Amax Zinc Co., Inc.

Before WOOD, Jr. and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this case, an employer who claimed to have fired an employee because of his poor interpersonal skills was found to have discriminated against that employee on account of his age. In 1986, Joseph Giacoletto was 58 years old and had been a supervisor for Amax Zinc Company, Inc. ("Amax") for approximately 14 years. Amax fired Giacoletto because its managers considered him rude and uncommunicative. Giacoletto then sued under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The jury found that Amax had discriminated against Giacoletto, but that the discrimination was not willful. The trial court rejected Amax's motion for judgment notwithstanding the verdict ("JNOV") and upheld the award. Amax appeals on only one ground, claiming that there was insufficient evidence to support the jury verdict. We disagree and affirm.

*Discussion*

1. The Question on Appeal

Because we have recently discussed the law relating to post-trial challenges to the sufficiency of the evidence, *see Perfetti v. The First National Bank of Chicago,* 950 F.2d 449 (7th Cir.1991), we will summarize that law very briefly here. Giacoletto's claim has already gone to the jury. Thus, the only question on appeal is "whether there was sufficient evidence for a reasonable jury to find that age was a determining factor" in the employment decision. *Brown v. M & M/Mars,* 883 F.2d 505, 507 (7th Cir.1989). *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), allow a plaintiff to prove that age was a determining factor with any of four different types of evidence:

1) direct evidence that age was a determining factor, such as discriminatory

statements uttered by the employer's decision-maker.

2) circumstantial evidence that age was a determining factor, such as a statistical imbalance in the employer's workforce.

3) direct evidence that the employer's proffered justification is pretextual, such as a contradiction between the employer's proffered justification at trial and documentary evidence from the time of the decision.

4) circumstantial evidence that the employer's proffered justification is pretextual, such as evidence that the proffered justification is not a genuine job requirement.

See generally *Perfetti*, 950 F.2d at 450–51.

In determining the sufficiency of this evidence, we must resolve any evidentiary conflict and every permissible inference in favor of the party who won the verdict. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984). Furthermore, we do not judge the credibility of witnesses. *Id.* "Our role is not to weigh the evidence in search of a preponderance as would a jury, but it is instead the more restrictive function of determining if the evidence in support of the verdict is *substantial....*" *Id.*

2. The Evidence at Trial

Giacoletto's theory of the case was that Amax wanted him to participate in a voluntary early retirement program, and when he indicated a lack of interest in doing so, he was discharged involuntarily instead. This theory was supported by what amounts to three pieces of evidence. First, Giacoletto presented evidence that age was a determining factor in Amax's decision to terminate him. Amax was in the process of instituting an early retirement program focused on employees who were over 55 years old and had more than ten years of service with the company. Neil Ruebsamen, Amax's manager of industrial relations, specifically approached Giacoletto to determine whether Giacoletto was interested in taking early retirement. Giacoletto said that he was not. A few

weeks later, he was fired. Amax argues that this evidence is not relevant to the case, because Ruebsamen was acting on his own and was not involved in the decision to fire Giacoletto. But Ruebsamen testified that he was not sure whether he had acted under his own initiative in polling employees, and that he had had some discussions with Steve Mueller, the plant manager, about this matter. Tr. at II–85. Amax also argues that it could not have fired Giacoletto to retaliate for his refusal to retire early because Giacoletto was not eligible for early retirement in the first place. According to Amax's early retirement plan, an employee was eligible for early retirement only if that employee's retirement could have saved the company money by lessening the number of employees on the payroll. Tr. at II–27. For example, the retirement would have to allow the company to eliminate the job, fill the job from within, or combine the job with an existing position. Amax claims that Giacoletto's supervisory position could not have been eliminated, filled from within, or combined with another position. But there was sufficient evidence for the jury to conclude otherwise. At the time Giacoletto was fired, no thought had been given as to who would replace him, and he was not replaced until three or perhaps four months later. During the interim, Giacoletto's duties were fulfilled by an existing employee. And when Giacoletto finally was replaced, it was by an internal employee who was already on the payroll.

Giacoletto also presented direct evidence that Amax's proffered justification for terminating him was pretextual. Amax claimed that it had fired Giacoletto because he had poor interpersonal skills as a manager; he was rude and uncommunicative. Amax noted three particular instances of Giacoletto's poor behavior that preceded his termination. Although Amax presented strong evidence that Giacoletto was in fact rude and uncommunicative, the jury was entitled to conclude that these defects were not the real reasons for Giacoletto's termination. Giacoletto's performance evaluations in previous years consistently indicated that although he had poor inter-

personal skills, he was an effective manager nevertheless. Giacoletto had supervised three separate departments at Amax during his tenure there. In 1985, just prior to Giacoletto's termination, his department achieved excellent productivity while operating within budget. Despite his department's productivity, Giacoletto received a suspiciously negative 1985 performance evaluation just six days before he was fired. For example, on a scale of 0 to 5, Giacoletto received a rating of 1 in terms of his productivity for the year. At trial, Amax attempted to escape the force of this pretext evidence by claiming that the productivity of Giacoletto's department was not a valid indicator of his performance. Tr. at II–61–62. Yet Giacoletto had been kept on as a supervisor for 14 years despite his abrasive personality and because of his ability to produce. The jury was entitled to conclude that productivity is in fact a major indicator of an industrial supervisor's job performance, that the negative evaluation for 1985 was a fabricated attempt to justify the forthcoming termination, and that Amax's proffered justification was therefore pretextual. *Cf. Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586–87 (7th Cir.1986) (upholding jury verdict of pretext when employer relied on subjective judgment about plaintiff's capabilities even though plaintiff was objectively superior to employee who was not fired).

Last, Giacoletto also presented indirect evidence that Amax's proffered justification was pretextual. When Amax terminated him, it failed to comply with its own procedures for terminating employees. For example, Amax did not counsel Giacoletto that his work had fallen below acceptable levels, develop a plan to bring his performance up to acceptable levels, or keep a written record of any counseling sessions with him. Plaintiff's Ex. 16. Although Amax's witnesses claimed that the company never applied these procedures to managerial personnel, the express language of the corporate policy statement indicated that the policy applied to Giacoletto. Tr. at II–56–60. The jury could reasonably have concluded that because Amax neglected to follow the procedures for help-

ing employees to overcome their deficiencies, the company had fired Giacoletto not because of his asserted deficiencies, but to retaliate for his refusal to retire. *See, e.g., Johnson v. Lehman*, 679 F.2d 918, 922 (D.C.Cir.1982) ("departure from internal hiring procedures is a factor that the trier of fact may deem probative").

All in all, this case is quite similar to *Perfetti v. The First National Bank of Chicago*. Perfetti claimed that a bank discriminated against him on account of his age by refusing to hire him for a job for which he was eminently qualified. The bank's decision-maker testified that she made her decision because Perfetti had made a poor impression on her in a personal interview. She had never specified this reason in writing, however. In both Perfetti and Giacoletto's cases, therefore, the employer relied on a subjective judgment about interpersonal skills to explain a poorly documented employment decision. In both cases, the plaintiff argued that the subjective judgment was simply a mask for age discrimination. And in both cases, the jury awarded damages to the plaintiff even though his evidence was far from overwhelming. Despite these similarities, we consider Giacoletto's verdict, unlike Perfetti's, supported by substantial evidence. Giacoletto presented evidence which tied the employment decision to a consideration of age, whereas Perfetti had absolutely no such evidence. Giacoletto also presented substantial evidence of pretext that cast a shadow on the employment decision, while Perfetti's pretext evidence was limited to his own self-serving contradiction of a single detail in the decisionmaker's testimony. In Giacoletto's case, both sides told a plausible and factually supported story, and the jury believed the plaintiff. We cannot disturb such a verdict.

■ This case illustrates the risk employers take when they make employment decisions based on essentially subjective judgments about qualities such as "interpersonal skills." Although relying on subjective factors is not *per se* illegal, the jury may, under some circumstances, reasonably consider subjective reasons as pre-

texts for discrimination. *See generally Perfetti,* 950 F.2d at 457–58. By improperly implementing a subjective employment decision which contradicted objective evidence regarding Giacoletto's capabilities, Amax allowed the jury to infer that it had discriminated against Giacoletto.

### Conclusion

Because Giacoletto presented substantial evidence to support the jury verdict, we AFFIRM the judgment for the plaintiff.