51 F.3d 276
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES ELECTION CORPORATION, Plaintiff-Counterclaim
Defendant-Appellee,
v.
MICROVOTE CORPORATION, Defendant-Counterclaim Plaintiff-Appellant,
v.
Donald EVONS, Counterclaim Defendant-Appellee.
 No. 94-2532.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 13, 1995.
Decided April 7, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 11, 1995.
 
 1
 Before COFFEY and KANNE, Circuit Judges, and MORAN, Chief District Judge[1].
 
 ORDER
 
 2
 Underlying this diversity case is a contract dispute between plaintiff United States Election Corporation (USEC), a Pennsylvania corporation, and defendant MicroVote Corporation (MicroVote), an Indiana corporation.[2] The case went before a jury in May 1994 and the jury found in favor of USEC. MicroVote now appeals on the basis of eleven errors allegedly committed by the district court before and during trial. We affirm.
 
 FACTS
 
 3
 In 1987 and 1988 USEC and MicroVote negotiated and signed a contract under which USEC was to act as the exclusive sales agent for MicroVote's electronic voting machine in eleven eastern states and the District of Columbia. USEC claims that it began pursuing sales opportunities, then learned that MicroVote was looking for someone to represent it in many of the states for which USEC was responsible. USEC considered this action a breach of the contract and attempted to persuade MicroVote to abide by the agreement. When that failed, USEC filed suit, asserting that MicroVote's breach cost it $320,000 in commissions from sales it had arranged and $20 million in future compensatory income. The complaint included a claim for loss of business reputation.
 
 
 4
 USEC filed its complaint in the Eastern District of Pennsylvania, and MicroVote responded with an answer and a request for trial by jury. In early 1991 the case was transferred to the Southern District of Indiana, and soon thereafter MicroVote filed a motion to dismiss and a counterclaim. The counterclaim asserted that MicroVote terminated the agreement in May 1989 because (a) contrary to its representations, USEC did not have sales connections in all twelve territories, (b) USEC failed to make any sales efforts in any state other than Pennsylvania, and (c) USEC failed even to try to acquire the expertise necessary to sell MicroVote machines properly. MicroVote sought compensation for lost sales, alleging counts of breach of contract, fraud, and conversion.
 
 
 5
 MicroVote filed its first amended counterclaim in July 1991. In November of that year it filed an amended motion to dismiss, which included additional claims for sanctions, fees, and costs and sought to hold USEC and its attorney in contempt of court. MicroVote also requested a ruling on its pending motions. On December 20, 1991, the court ordered USEC to show cause why MicroVote's motions should not be granted. USEC did not do so, but instead filed an answer to the counterclaim. In March 1992 the district court granted MicroVote's motion to dismiss and denied its motion for default judgment.
 
 
 6
 On April 14, 1992, USEC (represented by new counsel) filed a motion to vacate the dismissal order and reinstate its complaint and a motion in opposition to MicroVote's motion for sanctions. On April 20, MicroVote filed a response to USEC's motion to vacate and reinstate. Ten days later Evons and USEC answered MicroVote's first amended counterclaim. In July, the court granted USEC's motion to vacate dismissal and reinstate its complaint, and stayed its ruling on MicroVote's motion for sanctions.
 
 
 7
 USEC filed its first amended complaint in December 1992, and MicroVote answered in March 1993. As the case moved toward trial both sides submitted trial briefs and motions in limine. On May 23, 1994, the day the trial began, the court granted USEC and Evons' motion in limine.
 
 
 8
 The four-day trial opened with USEC's case and MicroVote's defense. MicroVote then presented its case in support of its counterclaim. MicroVote's motions for mistrial on May 24 and 26, 1994, were denied. On May 26 the jury returned a $350,000 verdict for USEC and directed that MicroVote recover nothing on its counterclaim. The court entered judgment on that verdict on May 27, 1994, and MicroVote now appeals.
 
 DISCUSSION
 
 9
 MicroVote challenges many aspects of the proceedings in the trial court. We examine each in turn. Where an inquiry into the substance of the decision below is necessary, we note the appropriate standard of review.
 
 
 10
 A. Order Denying MicroVote's Motion for Default Judgment
 
 
 11
 Chronologically, the first of MicroVote's arguments is that the district court erred when it denied its motion for default judgment. MicroVote says that the court should have entered a default judgment against USEC in March 1992 because USEC did not answer MicroVote's counterclaim or respond to the order to show cause why default judgment should not be entered.
 
 
 12
 A district court's decision to deny a motion for default judgment will be reversed only if it amounted to an abuse of discretion. Swink v. City of Pagedale, 810 F.2d 791, 792 (8th Cir.), cert. denied, 483 U.S. 1025 (1987); see also Merrill Lynch Mortgage Corp. v. Narayan, 908 F.2d 246, 250 (7th Cir.1990) (abuse of discretion standard used to review grant of default judgment). We find that the March 10, 1992 order was well within the court's discretion. The court held that because USEC had answered the counterclaim in January 1992, MicroVote's motion for default was moot. USEC should have responded sooner, but at the time the district court made its decision it would have been senseless to enter a default judgment.
 
 
 13
 MicroVote points out that because Evons and USEC's attorney received service of the counterclaim by certified mail in early 1991, and because the show cause order was entered in December 1991, USEC and Evons had notice that a response was due. But this fact does not alter the underlying posture of the case. At the time the district court ruled the answer had been filed, so MicroVote stood to suffer no prejudice that would justify entering a default judgment.
 
 B. Order Vacating Dismissal of Complaint
 
 14
 MicroVote next argues that the district court erred on July 1, 1992, when it vacated its March 10, 1992 dismissal of USEC's complaint. The dismissal order noted that the personal problems of USEC's original attorney, and the slim possibility that the case would be returned to the Eastern District of Pennsylvania, were inadequate reasons to justify USEC's failure to respond to MicroVote's motion to dismiss. Because USEC failed to show cause why the motion should not be granted, the court dismissed the complaint.
 
 
 15
 In July, acting on a motion from USEC's new attorneys, the court vacated its earlier order for two reasons: it found reason to believe that USEC and Evons had never received notice of the order to show cause or the motion to dismiss, and it found that because MicroVote's counterclaim (on which litigation was proceeding) involved the same subject matter as USEC's complaint, MicroVote would not be prejudiced by the reinstatement of the complaint. The court held that because "justice would be best served by a full adjudication on the merits of all claims and counterclaims," USEC's complaint should be reinstated. United States Election Corp. v. MicroVote Corp., No. IP 91-73-C, slip op. at 3 (S.D.Ind. July 1, 1992).
 
 
 16
 A district court has considerable discretion to decide whether to vacate an earlier order. Cameo Convalescent Center, Inc. v. Percy, 800 F.2d 108, 110 (7th Cir.1986) ("The district court has the discretion to make a different determination of any matters that have not been taken to judgment or determined on appeal. Prejudgment orders, such as motions to dismiss, are interlocutory and may be reconsidered at any time."). MicroVote does not contest the findings that support the district court's decision, and we believe the decision was reasonable under the circumstances. It certainly was not an abuse of discretion.
 
 
 17
 MicroVote's only other argument on this point is that the court never ruled on its Rule 12(b)(6) motion to dismiss USEC's original complaint. MicroVote is correct in a sense: the court below based its March order of dismissal on USEC's failure to show cause, not on its failure to state a claim, and never considered the 12(b)(6) motion, even after USEC asked for reinstatement of its claims. But MicroVote does not say that it renewed its motion in the spring of 1992. If it expected the court to consider its Rule 12(b)(6) argument along with USEC's motion for reinstatement, it should have once again brought its position to the court's attention. Its failure to do so cannot be remedied by presenting the argument for the first time on appeal. Citizens Insurance Co. of America v. Barton, 39 F.3d 826, 828 (7th Cir.1994) ("Arguments not raised in the district court are waived on appeal.").
 
 
 18
 C. Denial of MicroVote's Motion to Take Depositions
 
 
 19
 Just before trial MicroVote moved the court for permission to take the depositions of Evons and four other men, some of whom it had already deposed. It represented that the depositions, which it agreed to confine to matters not covered in earlier depositions, would yield admissible evidence that USEC and Evons were associated with criminal activity. MicroVote purportedly had discovered that R. Bruce Downing, the former director of the Delaware County (Pennsylvania) Board of Elections, and John F. McNichols, a former director and officer of USEC, were involved in some underhanded dealings that resulted in Downing's indictment on over 300 counts of misuse of public office. MicroVote needed to depose Evons, Downing, McNichols, and two others to support an argument that one of the reasons it terminated its contract with USEC was the contract's illegality and the unlawful involvement of USEC with the activities of Downing and McNichols.
 
 
 20
 USEC objected to MicroVote's motion on grounds that (a) MicroVote had not provided any reason to believe that the depositions would yield admissible evidence, (b) USEC believed that the proceedings against Downing were not connected to Evons or USEC and that MicroVote was just engaging in a fishing expedition, and (c) the extra depositions would cause USEC substantial expense and prejudice its ability to prepare for the trial two weeks later.
 
 
 21
 The district court denied MicroVote's motion without written order. On appeal MicroVote essentially repeats its earlier arguments and says the court erred in denying its request since the deposition evidence was critical to its illegality defense. It adds that the evidence would have been very useful to impeach Evons. Appellant's Br. at 14-17. USEC argues that the court acted within its discretion because MicroVote had already had ample opportunity to take depositions and because MicroVote sought to depose the witnesses only two weeks before trial.
 
 
 22
 MicroVote had previously taken the depositions of Evons, McNichols, and Downing. In May 1993 it sought to redepose Evons, and the district court denied that request. Then, in September 1993, the court barred any further discovery except by agreement of the parties or leave of court. The request for depositions at issue here came in mid-April 1994, five weeks before trial, and sought to schedule the depositions only two weeks before trial. The case had been pending since September 1990, USEC says, and the district court was justified in not delaying things any longer, particularly in the absence of any affidavit to support MicroVote's claim that Downing had been indicted and that his indictment was related to the USEC-MicroVote litigation.
 
 
 23
 A district court's rulings on discovery matters are afforded great deference. Indianapolis Colts v. Mayor and City Council of Baltimore, 775 F.2d 177, 183 (7th Cir.1985) ("a trial court's 'discovery rulings are reversed only on a clear showing of abuse, and "it is unusual to find abuse of discretion in these matters" ' ") (quoting United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375, 1382 (D.C.Cir.1984) (quoting Swanner v. United States, 406 F.2d 716, 719 (5th Cir.1969))). MicroVote directs us to only one piece of information that might have led the district court to permit it to take a deposition: an assertion by MicroVote's counsel shortly before trial that a criminal matter was related to this case (which USEC, also by assertion, denied). We find this representation insufficient to support MicroVote's position. After all, the thrust of MicroVote's contentions was not that USEC was terminated because it had involved MicroVote in illegal sales, but that USEC had not done what it promised to do and had made no sales at all. More importantly, the record seems to indicate that MicroVote was unaware of any claimed transgressions when it ended its relationship with USEC and that they played no role in the termination. In light of the long period of time MicroVote had to assemble its case, the proximity of its request to the beginning of the trial, and the lack of any support in the record for its assertions, we find that the district court acted well within its discretion in denying it leave to take further depositions.
 
 D. Grant of USEC's Motion in Limine
 
 24
 On May 13, 1994, USEC and Evons filed a motion in limine asking the court to bar any mention of the fact that while testifying on behalf of USEC on January 31, 1992, Evons asserted his Fifth Amendment privilege against self-incrimination when asked about his sales activities with McNichols and Downing. The court granted the motion, holding that mentioning Evons' invocation of the Fifth Amendment would be unduly prejudicial.
 
 
 25
 We review a district court's decision to grant or deny a motion in limine under an abuse of discretion standard. See United States v. Guyton, 36 F.3d 655, 660 (7th Cir.1994); INB Banking Co. v. Iron Peddlers, Inc., 993 F.2d 1291, 1293 (7th Cir.1993). MicroVote argues that the district court abused its discretion because it allowed USEC and Evons to have it both ways. One of USEC's main allegations of performance on the contract involved its dealings with Delaw are County officials, yet Evons was taking the Fifth with respect to those same dealings. MicroVote asserts that USEC, the plaintiff, should not have been allowed to use the Fifth Amendment "as both a sword and a shield in prosecuting a civil suit." Appellant's Br. at 20. Therefore, the court erred in granting the motion in limine. USEC responds that there was no abuse of discretion because MicroVote's proper remedy was an order compelling Evons to testify, and it never sought such an order, and, in any case, MicroVote failed to preserve the error because it made no offer of proof at trial.
 
 
 26
 We have held that although a civil defendant who invokes the Fifth Amendment cannot have judgment entered against him solely on the basis of his silence, "[a]n adverse inference may be drawn at trial from the Defendant's refusal to answer." National Acceptance Co. of America v. Bathalter, 705 F.2d 924, 930 (7th Cir.1983); Daniels v. Pipefitters' Association Local Union No. 597, 983 F.2d 800, 802 (7th Cir.1993) (adding that inference "may be drawn, but ... does not necessarily need to be drawn"). But we have not decided whether a plaintiff can base a lawsuit (or at least some part of his case) on something about which he invokes the Fifth Amendment. Other courts have made clear that "automatic dismissal of a civil complaint when a plaintiff invokes the Fifth Amendment" is impermissible, since such a sanction for invoking the privilege is so costly that it "would effectively destroy the right to remain silent." Bootz v. Childs, 627 F.Supp. 94, 101 (N.D.Ill.1985) (citing cases). But lesser sanctions, such as allowing the defense to comment on the plaintiff's invocation of the privilege, may be appropriate. In each case the key is to balance "the plaintiff's Fifth Amendment right against the defendant's substantial need for critical information." Id.; see also City of Chicago v. Reliable Truck Parts Co., 822 F.Supp. 1288, 1293-94 (N.D.Ill.1993) (employing a balancing approach).
 
 
 27
 In sum, MicroVote is correct that a defendant generally is entitled to comment on a plaintiff's decision to invoke the Fifth Amendment. But that rule does not permit MicroVote to introduce irrelevant evidence; it had to show that the evidence of Evons' decision to take the Fifth would be material to the case. MicroVote made no effort to do so at trial, and even on appeal offers no explanation of how the evidence would be material. In fact, as noted above, there is no indication that MicroVote was aware of any alleged wrongdoing when it terminated its business with USEC. Therefore, we must conclude that no error occurred.
 
 
 28
 E. Grant of Judgment as a Matter of Law on MicroVote's Fraud Claim
 
 
 29
 Count II of MicroVote's counterclaim against Evons and USEC alleges a cause of action for fraud. It claims that in a series of conversations Evons used false representations about USEC's progress under the original contract, and its ability to sell MicroVote machines, to induce MicroVote not to terminate the original contract and to enter into another agency agreement. At the end of the evidence on May 25, 1994, USEC moved for judgment as a matter of law on the fraud counterclaim pursuant to Rule 50. The district court granted the motion, finding that "there is no proof of fraud. You allege statements that [Evons] made and didn't carry out. That's not fraud. Then you allege statements that he made that induced you to enter into the contract of October 3. Well, on October 3, you knew about his business." Tr. 656.
 
 
 30
 Rule 50 permits courts to enter judgment as a matter of law if, after a party has been fully heard on an issue, "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50. We review a district court's decision to enter judgment as a matter of law de novo. Jackson v. Bunge Corp., 40 F.3d 239, 246 (7th Cir.1994).
 
 
 31
 MicroVote says the district court erred in its ruling because one of MicroVote's witnesses, James Ries, testified to all the essential elements of fraud. USEC responds that MicroVote offered only two facts in support of its fraud claims, both predictions by Evons of USEC's success in its endeavors to drum up business for MicroVote. Under Indiana law it is well settled that "actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed." Biberstine v. New York Blower Co., 625 N.E.2d 1308, 1315 (Ind.Ct.App.1993). Therefore, says USEC, the decision below should be affirmed.
 
 
 32
 MicroVote's reply brief points to two allegedly false statements Evons made about the past during his discussions with Ries: he said that he and USEC had experience selling voting machines (which MicroVote says he admitted at trial was false) and he assured MicroVote that USEC had sufficient financial ability to promote MicroVote products (which MicroVote says it did not). The record contains testimony by Ries that a representation was made at the introductory encounter between the two men that USEC "was experienced in the election business selling equipment." Tr. 426. But MicroVote points to no evidence that shows that the statement was false (in fact, USEC was experienced in selling election print material), and falsity is an essential element of fraud. Further, we are not told of any evidence of reliance by MicroVote, another essential element, and we would not expect to be because each of the parties had had considerable experience with the other's business before they entered into the agreements relevant to this dispute. We refuse to do MicroVote's work for it by scouring the record for evidence to support its fraud claim. It is the duty of the parties to support their positions on appeal with adequate citations to the record, and their failure to do so constitutes a waiver of those positions. Fed.R.App.P. 28(a)(5) ("The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."); Roland v. Langlois, 945 F.2d 956, 963 (7th Cir.1991) (court would not comb record to construct argument for appellant); Holzman v. Jaymar-Ruby, Inc., 916 F.2d 1298, 1303 (7th Cir.1990) (court would not search record for district court's basis for making challenged ruling); Bonds v. Coca-Cola Co., 806 F.2d 1324, 1328 (7th Cir.1986) (brief must contain "adequate discussion of the portions of the record that bear on the events" at issue).
 
 
 33
 As for the second statement, the record shows that Evons said only that he was a printer. Tr. 428. The fact that Ries mistakenly assumed (based on that statement) that Evons' financial condition must be sound does not render the statement a misrepresentation and does not support MicroVote's fraud claim. In the absence of any further evidence of fraud (and MicroVote offers none), we conclude that the district court correctly entered judgment as a matter of law.
 
 F. Interpretation of Contracts
 
 34
 The dispute between USEC and MicroVote involves three contracts: the first agency agreement (executed August 15, 1988), the consultant agreement (executed October 3, 1988), and the second agency agreement (executed October 3, 1988). The first agency agreement allowed USEC 10% commissions on any sales it made on behalf of MicroVote and gave USEC a right of first refusal with respect to territories contiguous to the twelve USEC already had. The consultant agreement was a contract between Evons and MicroVote, under which Evons was to receive 5% commissions and had a right of first refusal. The second agency agreement between USEC and MicroVote gave USEC 5% commissions and no right of first refusal. The first and second agency agreements had similar termination clauses. USEC's complaint relied on the first agency agreement, while MicroVote's counterclaim asserted that the second agency agreement controlled. Both parties agreed that the consultant agreement was not at issue. During trial, however, the district court ruled that both the consultant agreement and the second agency agreement were in effect. Tr. 149, 160.
 
 
 35
 MicroVote argues that the district court (1) improperly permitted USEC to maintain its case, even after holding that the contract on which USEC had based its complaint did not apply, (2) erroneously allowed Evons to testify about violations of his right to first refusal when the second agency agreement contained no such right, and (3) changed its interpretation during trial to MicroVote's detriment.
 
 
 36
 1. USEC's Case. First, MicroVote says that USEC should not have been allowed to maintain its suit after the court found that the first agency agreement did not apply. After all, USEC's complaint was based on that agreement, not the second agency agreement, and USEC was not even a party to the consultant agreement.
 
 
 37
 MicroVote is in error. Rule 15(b) permits issues "not raised by the pleadings" but "tried by express or implied consent of the parties" to be treated "in all respects as if they had been raised in the pleadings." Fed.R.Civ.P. 15(b). Here the issues tried turned out to involve the second agency agreement, not the first, but they were not so far from the issues raised in USEC's amended complaint as to prejudice MicroVote--especially since the court's ruling favored MicroVote's construction of the agreements and occurred early enough that the majority of the trial was conducted with the second agency agreement controlling. Therefore, the district court properly allowed USEC to maintain its case and to amend its pleadings to conform to the evidence.
 
 
 38
 2. First Refusal Testimony. Second, MicroVote says the court should not have found that the consultant agreement was in effect when both parties said it did not apply. The finding was problematic because the consultant agreement permitted Evons a right of first refusal, something not found in the second agency agreement, and USEC presented significant evidence of MicroVote's violations of this right. USEC responds that it did not make any claim under the consultant agreement, nor did it argue the consultant agreement to the jury.
 
 
 39
 MicroVote provides no support from the record for its assertion that Evons testified about first refusal violations after the judge ruled that only the consultant agreement and second agency agreement applied. Nor does it point out where we can find any argument to the jury that the first agency agreement governed the dispute. Our own review of the record likewise reveals nothing that would lead us to believe that MicroVote was unduly prejudiced by any testimony USEC presented.[3] Therefore, we reject this argument.[4]
 
 
 40
 3. Changing Interpretation. Finally, MicroVote argues that the court's rulings on what agreement governed the dispute, forced it to defend a "moving target" and possibly confused the jury. The only evidence of changing interpretations that MicroVote produces is that the court (a) denied MicroVote's motion to dismiss, which argued that the first agency agreement did not control, thereby implying that the first agency agreement might control; (b) said early in the trial that the second agency agreement controlled; and (c) said later that both the consultant agreement and the second agency agreement controlled.
 
 
 41
 This argument fails. The court's decision on the motion to dismiss did not settle the issue of which agreement controlled, so it should not have affected MicroVote's ability to present its defense. And the court's ruling at trial that the second agency agreement was in effect was not inconsistent with its ruling soon thereafter that both that agreement and the consultant agreement were controlling. The court stood by this latter ruling for the remainder of the trial. MicroVote's defense was clearly not prejudiced by the court's interpretations, particularly since the contracts (as MicroVote admits) are all similar.
 
 
 42
 G. Sufficiency of Evidence to Support the Verdict
 
 
 43
 Next, MicroVote argues that the jury's verdict was not supported by sufficient evidence. Below we list the five points it makes and explain why we reject them.[5]
 
 
 44
 (1) Evons' damages testimony was largely his best guess of what USEC had lost on the contract; there was no item-by-item breakdown of the work he and USEC did for MicroVote.
 
 
 45
 (2) On cross-examination, Evons admitted that although he claimed USEC had been hard at work for MicroVote, no sales had been made, no bids entered, and no orders placed for MicroVote machines.
 
 
 46
 Points (1) and (2) merely challenge the credibility of the testimony offered by Evons. Our review of jury verdicts does not permit us to evaluate credibility. Giacoletto v. Amax Zinc Co., 954 F.2d 424, 426 (7th Cir.1992). We must uphold the jury's decision if the evidence in the record, viewed in the light most favorable to the prevailing party, provides any reasonable basis for the verdict. Id. ("In determining the sufficiency of th[e] evidence, we must resolve any evidentiary conflict and every permissible inference in favor of the party who won the verdict."); see also Lenard v. Argento, 699 F.2d 874, 882 (7th Cir.), cert. denied, 464 U.S. 815 (1983). We find that Evons' testimony provided sufficient basis for the jury's verdict, so we will not second-guess the jury's decision to accept his version of events.
 
 
 47
 (3) The total amount of expenses USEC showed was $9000 per month for 25 months, which is only $225,000--far short of the $350,000 verdict.
 
 
 48
 Under Superbird Farms, Inc. v. Perdue Farms, Inc., 970 F.2d 238, 247 (7th Cir.1992), "we may disturb a jury's damage award only if it is monstrously excessive, the product of passion or prejudice, or if there is no rational connection between the award and the evidence." The jury easily could have concluded that USEC lost more than just its cost of doing business for MicroVote--for example, its loss of commissions on potential sales, such as the $3.822 million sale that MicroVote later made in one of USEC's former territories. Tr. 604. Reaching such a conclusion would have been rational in light of the record.
 
 
 49
 (4) The court ruled that the contract's renewal provision could be read in two different ways and that the parties could introduce evidence to clarify the ambiguity; this might have confused the jury as to whether MicroVote properly terminated the contract.
 
 
 50
 The provision in question reads: "This Contract is in effect for one year and automatically renews for a one-year period unless writ[ten] notice is presented 90 days prior to expiration." Second Agency Agreement p 22. We do not see how the court's interpretation of this provision has any bearing on the sufficiency of the evidence. MicroVote seems to be challenging not the sufficiency of the evidence, but the propriety of the court's ruling on the contract. We think the court properly held that the contract could be extended for one year but that there was ambiguity as to whether it could be extended further. It also correctly allowed both sides to introduce evidence to clarify the ambiguity. Tr. 293-94.
 
 
 51
 (5) USEC's exhibit summarizing its damages showed maximum damages of only $215,000, and at closing USEC only asked for $187,500, yet the jury awarded $350,000.
 
 
 52
 Indiana law permits juries to find damages greater than those requested by counsel--particularly those requested in closings, which are not part of the evidence. See Prange v. Martin, 629 N.E.2d 915, 922 (Ind.Ct.App.1994) ("Appellate courts will not substitute their idea of a proper damage award for that of the jury. Instead, the court will look only to the evidence and inferences therefrom which support the jury's verdict. We will not deem a verdict to be the result of improper considerations, unless it cannot be explained on any other reasonable ground. Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed."). In this case Evons' testimony was sufficient to support the jury's verdict.
 
 
 53
 In sum, even taken together, MicroVote's sufficiency arguments do not show that the jury award was monstrously excessive. Rather, there was sufficient evidence for the jury to conclude that USEC suffered damages of $350,000. Therefore, we will not disturb the verdict.
 
 
 54
 H. Refusal to Allow Evidence of USEC's Conversion of Property
 
 
 55
 Count III of MicroVote's counterclaim stated a claim for conversion against USEC. MicroVote alleged that USEC had committed criminal conversion because it retained several voting machines MicroVote had loaned it to conduct demonstrations. (USEC was to pay MicroVote for the machines out of its first sales commission.) MicroVote sought treble damages for the value of the machines, invoking Indiana Code Sec. 34-40-30-1, which provides that "[i]f a person suffers a pecuniary loss as a result of a violation of [the criminal conversion statute] ... the person may bring a civil action [seeking, inter alia,] [a]n amount not to exceed three (3) times the person's actual damages." The district court held that MicroVote had not shown any proof of conversion. At most, it said, USEC had wrongfully retained the machines and owed MicroVote their fair market value. Tr. 660-61. MicroVote argues that this was error. USEC responds that MicroVote failed to present sufficient evidence to support its conversion claim.
 
 
 56
 We evaluate the district court's decision to grant USEC judgment as a matter of law under a de novo standard. Jackson, 40 F.3d at 246. We find that the court did not err in this case. The Indiana conversion statute states that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Ind.Code Sec. 35-43-4-3. It seems clear that USEC had the requisite state of mind and that the machines belonged to another person: MicroVote. But USEC's control over the machines was not unauthorized--at least not at first--and "[w]here the initial possession is lawful, conversion occurs only after an unqualified demand for return." Coffel v. Perry, 452 N.E.2d 1066, 1069 (Ind.Ct.App.1983). MicroVote argues that it later demanded the machines' return, but that USEC refused. USEC says it tried to return the machines on MicroVote's demand, but that they were rejected.
 
 
 57
 MicroVote provides no references to any evidence in the record to support its version of the events; its only citations are to counsel's discussions of the conversion claim with the court. USEC, on the other hand, notes that Evons testified that USEC tried (unsuccessfully at first) to return the machines to MicroVote and eventually succeeded in returning them to MicroVote's supplier. Tr. 183-84; see also Tr. 656-57, 660-61. Because MicroVote highlights no evidence that would support its conversion claim, we uphold the ruling below. See supra Part E (unless appellant identifies in the record the basis for its arguments on appeal, those arguments are waived).
 
 
 58
 I. Exclusion from Evidence of USEC's Original Complaint
 
 
 59
 MicroVote's next argument is that the district court erred in refusing to send a copy of USEC's original (and superseded) complaint to the jury room with the other exhibits, even though the complaint had previously been admitted into evidence. After closing arguments, when counsel were gathering trial exhibits to be sent back with the jury, MicroVote says the court omitted to send USEC's complaint. When MicroVote's counsel asked that the complaint be sent because it had already been admitted in evidence, the judge responded, "I don't think there was such a ruling. If there was, it was a poor ruling and should be superseded. We do not ordinarily put complaints in evidence." Tr. 763. MicroVote says the exhibit should have been sent to the jury since it rebutted USEC's argument in closing that there was only one complaint for breach of contract, not two, and thus supported MicroVote's abuse of process claim.
 
 
 60
 USEC correctly points out that "[w]e review a district court's decision to allow exhibits into the jury room for an abuse of discretion." United States v. Hofer, 995 F.2d 746, 748 (7th Cir.1993). In this case, the confusion of the discussion at trial makes it difficult to determine what happened. MicroVote's attorney referred to the document he wished to have admitted as both the original complaint and the first amended complaint. The judge seemed unclear as to whether the exhibit in question had been admitted at all. He ruled that
 
 
 61
 the record will show whatever happened. And if the record shows that I said that the amended complaint was in evidence, as distinguished from being part of the record, well then, you have got--obviously [the exhibit] is not going to the jury. So you have something you can complain about on appeal if necessary.
 
 
 62
 Tr. 764. The original complaint clearly had been admitted into evidence, Tr. 514, and MicroVote's attorney had commented on it in closing, as part of his abuse of process argument. See e.g., Tr. 717. But as the passage above indicates, the judge seemed to think the issue was whether the amended complaint, not the original complaint, could be sent to the jury--and error that MicroVote's counsel did not correct and in fact probably caused by failing to identify the exhibit properly. It was counsel's duty at trial to know what complaint he was referring to and to make that clear to the trial judge. The record shows that he did not do so. Therefore, it was not an abuse of discretion for the judge to deny counsel's request.
 
 J. Admission of USEC's Damages Exhibits[6]
 
 63
 MicroVote's tenth argument is that the district court erroneously permitted USEC to introduce its damages exhibits into evidence. It claims that "Evons could have s[a]t down and written up the damage documents the day before the jury trial and brought [them] to trial," and that "during pretrial discovery a Motion to Produce was requested for any such materials but none was produced or put on the [USEC] Exhibit List." USEC flatly denies that any of its exhibits was manufactured. It also denies that the exhibits were not identified on pretrial lists. In fact, it maintains that the exhibits were identified six months before trial and that MicroVote simply failed to request them in discovery.
 
 
 64
 1. Fabrication. The closest MicroVote comes to providing evidence of fabrication is its attorney's unsupported assertion at trial that "it looks like somebody sat down and spent about two days and wrote these documents up." Tr. 243. This statement clearly is not probative of anything. USEC, on the other hand, presented the trial judge with uncontradicted testimony from Evons explaining how the exhibits were made and that they were made in the ordinary course of USEC's business. Tr. 239-40. "We review claims of reversible error in a trial court's decision to admit or exclude evidence only for abuse of discretion, and in so doing, give the trial judge great deference." Doe v. United States, 976 F.2d 1071, 1076 (7th Cir.1992), cert. denied, 114 S.Ct. 58 (1993). We find that the judge acted within his discretion in admitting the exhibits into evidence over MicroVote's fabrication objection.
 
 
 65
 2. Failure to Identify Exhibits on Exhibit Lists. In response to MicroVote's second argument, USEC points out that its damages exhibits fall within the scope of paragraph 7 of its Final Exhibit List, which identifies "[r]ecords from [USEC] with respect to expenses incurred by and salaries paid to employees and agents of [USEC] while promoting the sale of the MicroVote electronic voting machine during the years 1987 through 1990." Plf's Final Exh. List p 7. That list was filed on November 17, 1993, more than six months before trial. MicroVote does not dispute that paragraph 7 covered the exhibits in question, but claims that its attorney had not seen the exhibits before trial and should have had a chance to inspect them so that he could present evidence that they were altered. Reply Br. at 19. Yet counsel for MicroVote seemingly admitted at trial that he had received Exhibits 136-138. Tr. 244. Only Exhibit 139 was new to him, see Tr. 247, and that exhibit was merely a summary of the information contained in Exhibits 136-138, so it added nothing that MicroVote could not have verified on the spot. In sum, MicroVote has provided us with no reason to believe that it was wrongfully prevented from examining USEC's exhibits. We therefore hold that the district court's admission of these exhibits was not an abuse of its discretion.
 
 
 66
 K. Refusal to Permit the Reading of Excerpts from Depositions
 
 
 67
 MicroVote's final argument is that the district court abused its discretion in refusing to allow MicroVote to read into evidence the depositions of McNichols and Downing. As discussed in Part C above, one of MicroVote's defenses was that the contract was void on grounds of illegality and violations of public policy, and these depositions contained evidence MicroVote hoped would prove that defense. Yet MicroVote says the district court "summarily blocked any such testimony," "making summary rulings from the bench that said excerpts were immaterial and would delay the trial." Appellant's Br. at 49.
 
 
 68
 USEC responds that "[n]othing could be further from the truth." Appellee's Br. at 42. What really happened, it says, was that the court instructed MicroVote's attorney to identify the passages from the depositions he wished to read. When the attorney tried to do so, he spent eight pages of record identifying various passages of McNichols' deposition, then decided not to offer any of it. Then he moved to Downing's deposition, spent two pages of record deciding which portions to offer, then said he was not sure whether he was going to use the depositions at all. Finally, after another ten pages' worth of discussion about the depositions' potential uses, MicroVote's lawyer said he had no further evidence to offer. USEC denies that the court made any summary rulings on the depositions and says that to the extent the court urged MicroVote to limit its use of the depositions, it acted within its broad discretion. Appellant's Br. at 42-43 (citing M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1408 (7th Cir.1991) ("Trial courts have discretion to place reasonable limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence. The district court's exclusion of such evidence will not be reversed absent a clear showing of abuse.") (citations omitted)).
 
 
 69
 USEC has the better of this dispute. The court urged MicroVote to present less than the entirety of the Downing and McNichols depositions and told MicroVote's lawyer that the use to which he intended to put them would not get him very far. But a review of the record reveals that the court did nothing that could constitute an abuse of discretion. Tr. 620-40. MicroVote's lawyer's decision not to use the exhibits was of his own accord, not because of any undue badgering from the judge.
 
 CONCLUSION
 
 70
 MicroVote presents this court with many allegations of error, but it offers little in the way of legal authority or citations to the record to support its positions. Even where it does offer more substantiation for its claims, we disagree with its assertions. We find that the district court acted within its discretion in shepherding this litigation through pretrial and trial proceedings. We affirm.
 
 
 
 [1]
 The Honorable James B. Moran, Chief Judge of the Northern District of Illinois, is sitting by designation
 
 
 [2]
 Donald Evons, the president of USEC, is also an appellee because MicroVote's counterclaim named him as a counter-defendant. Because his arguments track those of USEC, we will often refer to the two simply as USEC
 
 
 [3]
 The only potentially damaging statement USEC made came in its rebuttal argument at the close of the trial, when one of its lawyers mentioned 10% as the measure of USEC's commission. Tr. 731. (USEC was entitled to 10% under the first agency agreement but only 5% under the second.) This statement was made in response to MicroVote's claim of abuse of process with respect to the filing of USEC's initial complaint. Tr. 730-31. That lawsuit was based on the first agency agreement, so it was fitting for the lawyer to mention that agreement's commission rate when discussing the amount of damages claimed in the initial complaint
 
 
 [4]
 Because we find no evidence that the district court's contractual interpretation prejudiced MicroVote in any way, we need not decide whether the interpretation was correct. Fed.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); Barber v. Ruth, 7 F.3d 636, 641 (7th Cir.1993) (same)
 
 
 [5]
 MicroVote includes a sixth point in this section of its brief: that USEC manufactured or altered exhibits and that MicroVote was prevented from authenticating those exhibits. This argument is also raised as the tenth argument in MicroVote's brief, and we consolidate our discussion of the issue in that part of our opinion. See infra part J
 
 
 [6]
 Puzzlingly, a portion of MicroVote's argument on this issue appears in the section of its brief that discusses sufficiency of the evidence. For purposes of our analysis, we deal with the entire argument in this part of our opinion